## Trinity & Sabine Railway Company v. Alle O. O'Brien.

Delivered May 26, 1898.

**1. Negligence—Duty of Person Injured.**

Negligence of one injured by the bite of a dog in failing to have the wound properly treated, by which the injury was aggravated, will not bar a recovery for the injury proximately resulting from the bite, if it was due to the negligence of another person.

**2. Mental Anguish—Evidence Inadmissible.**

Evidence as to the effect on the mind of plaintiff in an action for personal injuries by the bite of a dog, when told by a physician that she was in danger of hydrophobia, lockjaw and blood poisoning, is inadmissible.

**3. Damages—Punitive Not Recoverable, When.**

Punitive damages can not be recovered against a railway company for injuries caused by the bite of a dog belonging to a passenger, tied by the porter so that it could reach other passengers.

**4. Railway Company—Degree of Care—Safe Depots.**

A railway company is required to exercise only such care as reasonably prudent persons would exercise in order to keep its station safe for the use of passengers.

**5. Same—Station Agents—Remarks Not Binding.**

Jocular remarks by a station agent as to the biting of a passenger by a dog which had been tied by the porter are not within his duties as agent so as to be chargeable to the company.

**6. Damages—Poverty of Plaintiff.**

Evidence that plaintiff in an action for personal injuries was poor, and had no means to live upon except her earnings, is inadmissible on the issue of damages.

**7. Evidence—Reputation of Biting Dog.**

Evidence that the dangerous character of a dog which had been tied by a railway porter so that it could reach the door of the waiting room of the depot, and by which the plaintiff was bitten, was so well known that the company's agents would have learned it if they had made any effort to do so, is admissible.

**8. Railway Company—Care of Depot.**

A railway is not, as a matter of law, relieved from liability for an injury to a passenger caused by the bite of a dog tied by the porter so that it could reach the door of a waiting room at a station merely because the porter did not know that the dog was a vicious one.

**9. Same—Waiver of Rules.**

In an action against a railroad company for injuries caused by the bite of a dog, an instruction as to the rule of the company which did not require it to receive dogs unless they were boxed or crated, is improper where the company received the dog in question without its being boxed or crated.

**10.  Argument of Counsel.**
Counsel should not be permitted to state in their argument facts about which there is no evidence.

Appeal from Tyler.   Tried below before Hon. Stephen P. West.

*Hill & Hill* and *Sam T. Robb,* for appellant.

No brief for appellee reached the Reporter.

WILLIAMS, Associate Justice.—Appellee was bitten by a dog at appellant's depot in Corrigan, and brought this action to recover damages for the injury, alleging that it resulted from negligence on the part of appellant's agents in charge of the station.   The dog belonged to one Mrs. Morgan, who was moving from Corrigan to Trinity, and who led the dog to the station to be shipped on the train on which she and her baggage were to be carried, and delivered it into the custody of a porter in appellant's employ.   There is evidence, which is contradicted, however, that Mrs. Morgan directed the porter to place the dog where he could get to no one, informing him that the animal was likely to bite. The porter tied the dog to a truck upon the platform in front of the waiting room of the station so that the dog could reach the door of that room.   There is evidence that both this porter and the station agent had lived at Corrigan, and held their positions for several years, and that the general reputation of the dog was that it was vicious and inclined to bite, and that such was its real character.   There is also evidence that the porter had knowledge of this fact besides such as was communicated to him on the occasion in question.   About all this there is more or less conflict.

On the day in question (January 8, 1896,) appellee, a young lady of twenty-two or three, in company with other ladies, went to the station for the purpose of taking passage upon the train, and, having traversed the platform leading to the waiting room, had placed one foot in the door of that room when she was seized and bitten by the dog upon the inside of the upper portion of the thigh.   She had not purchased a ticket, nor in any way made known to appellant's agents her purpose to become a passenger over its road.

The nature of the questions to be decided will appear from the assignments considered in the order of their presentation.

Verdict and judgment were rendered for appellee for $8000 actual and for $2000 exemplary damages.

The first point urged for a reversal is, that appellee should not have been permitted to recover any damages, for the reason that the evidence shows that after receiving her injury she neglected to employ ordinary care in having it treated and cured, from which great and unnecessary aggravation of its consequences ensued.   A charge expressing this view was requested and refused.

The evidence shows, that after being bitten appellee proceeded on her

journey and remained absent two or three days, during which time she went to a show and walked about two different towns making up music classes; that after her return to Corrigan she continued to use the limb, walking and dancing at balls; that her first treatment by a physician was more than a month, and perhaps more than four months, after she was bitten; that during this time the wound would at intervals become inflamed and painful, causing fever; that this condition has continued up to the trial; and there is evidence tending to show that her limb has been permanently drawn so as to produce a limp in her walk and to impair and render painful its use. The testimony of expert witnesses tends to show that prompt and proper medical treatment would have prevented these permanent conditions.

On the other hand, it appears that appellee within a few days consulted with one of her lady friends, showed her the wounds, and obtained and used such remedies as her judgment dictated; that her modesty caused her to shrink from exposing herself to medical examination; that the wounds were not apparently of a dangerous character; that, barring the danger of hydrophobia, blood poisoning, and like secondary consequences, the medical witnesses did not consider such injuries to be ordinarily of a very grave character.

The charge given by the court required that appellee should have taken such care of her wounds as a reasonably prudent person would have employed under like circumstances, and permitted her to recover only such damages as she would have sustained if she had taken such care, and not for increased injury attributable to want thereof. We think this gave the correct rule. Railway v. McMannewitz, 70 Texas, 76; Allinder v. Railway, 37 Iowa, 264; 5 Am. and Eng. Enc. of Law, 2 ed., 693.

Negligence which allows damage to accumulate is not, like that which helps to cause the injury, a complete bar to recovery. It simply prevents the recovery of damages which proper care would have averted. If appellee established her allegations that she was bitten by the dog through the negligence of appellant's servants, she was entitled to recover such damages as proximately resulted, which would include all of the natural consequences of the wound, except such as by the use of the care of a person of ordinary prudence she could have prevented. This is the whole extent to which the doctrine of contributory negligence is applied in such relations. The requested charge was properly refused. As the judgment will be reversed on other points, we refrain from the expression of an opinion upon the facts tending to show negligence on the part of appellee in caring for her wounds, as well as upon the question whether or not the amount of the verdict for actual damages is excessive.

It is next complained that the court permitted appellee to testify, that when she was first examined by a physician he stated to her that she was in danger of hydrophobia, lockjaw, and blood poisoning, and to the effect which this had upon her mind. The court allowed the evidence, not to prove the facts stated by the doctor, but as tending to show the effect of

the injuries upon appellee's mind. This court is of the opinion that the statements of the doctor should have been excluded. Mental suffering resulting proximately from the bite of the dog formed an element of damage (Goodson v. Blood, 52 Vermont, 251), but the inquiry should have been confined to the proof of such suffering, without bringing in the statements of others of facts which were calculated to mislead the jury.

We are further of the opinion that the court should not have submitted to the jury the question of punitory damages, but should have given the charge requested by appellant, that the evidence made no case for the recovery of such damages. This subject has been so often discussed that we deem it unnecessary to say more.

The charge of the court required of the defendant, with respect to the care to be used for the keeping of its station safe, that it be such as very prudent persons would use in such situations.

The defendant requested a charge defining the degree of care to be that employed by reasonably prudent persons.

The members of this court differ upon the question whether or not plaintiff when hurt was a passenger, as well as upon the further one as to the degree of care which the carrier owed to her, if a passenger, while at the station and before actually entering upon the cars. Upon both points the authorities may be said to conflict, at least that they apparently conflict. A majority of the court is of the opinion that the charge was erroneous in requiring more than the care which persons of ordinary prudence would employ under the same circumstances, and that the special charge, which substantially defined this standard, should have been given.

The evidence showed that, after appellee received her injury and while she was waiting in the station for the train, there were some jocular references to the occurrence between the agent, Carson, and another party. Appellee testifies that she does not remember them, if she heard them, and it is evident that they produced no impression on her feelings. They seem to have been made without an understanding of the fact that appellee had been really hurt. The court charged the jury that the defendant would not be responsible for the remarks of Carson, unless they were within his duties as agent, but that they might be considered by the jury in determining any other issues upon which they had a bearing. The remarks were plainly not within the scope of the agent's duty, and we fail to perceive any other issue upon which they had any bearing. While they appear to have been drawn out originally by appellant itself, it was error for the court thus to give weight to them by the charge, as if they were legitimate evidence for some purpose.

Appellee was allowed, over objection urged by appellant, to prove that she was poor and had no means to live upon except her avocation. This kind of evidence is held inadmissible upon the issue of damages, and we see nothing in the case to relieve it of the objection urged. Railway v. Lyde, 57 Texas, 510.

The testimony of persons acquainted with the dog was introduced to show that it was vicious and inclined to bite, and other evidence was introduced by plaintiff to show its general reputation in this regard in Corrigan. To the answers of one of the witnesses upon the latter point, appellant objected that it was hearsay and the opinion of the witness. There is some conflict among the decisions, in actions brought against the owners of animals for injuries inflicted by them on the question whether or not the general reputation of the animal can be proven. The effort in such cases, as we understand it, was to establish the character of the animal by proof of reputation. Whether this is admissible or not we need not decide. The question here was whether or not the defendant was guilty of negligence in fastening this dog at such a place under such circumstances. If its character was directly made known to defendant's agent, that, of course, was a strong circumstance tending to show negligence. If such fact was not communicated, there still would be a question as to whether or not, in fastening an unknown dog in such a place without inquiry as to its character, or other precaution taken for the protection of persons having such business at the station as that upon which appellee went there, appellant violated its duty to such persons.

In considering this question the jury, we think, were entitled to know that the dangerous character of the dog was so well known that appellant's agents would have learned it had they made any effort to do so. Besides, the notoriety of the animal's viciousness, if it be a fact that its viciousness was notorious, is a circumstance which is admissible as tending to show notice to the agents who lived in the town. As to its weight we express no opinion.

Appellant requested the following special charges, and assigns their refusal as error:

"As to whether the dog in question was a notoriously vicious and biting dog is a question of fact for you to determine under all the facts in evidence, there being a conflict on this issue. The defendant is not charged with notice of such character of the dog if it is found to exist from a preponderance of the evidence, unless it be shown by a preponderance of the evidence that notice of such character was carried to defendant by other means than such notice, if you find that such existed."

"Proof of general bad reputation of a dog as a biting dog in the town where he lives is not of itself notice to the agent of a railroad company in the town of the dog's reputation for biting."

We think the proper way to submit the case is to leave it to the jury to say whether or not, under all the circumstances, the defendant was guilty of negligence in fastening the dog at the place where he was tied; and, in passing upon this, they should be allowed to determine for themselves the effect to be given to the evidence tending to prove notice, as well as the effect of notice, or the absence of notice of the viciousness of the dog. The question is not in all respects the same as arises where it is sought to hold the owner of a dog responsible for injuries inflicted by it, merely because of his having kept a dangerous animal. Whether or

not the duty of using due care to keep its station free from danger to those having the right to go there was violated by putting such an animal in such a situation without knowledge as to the danger to result, is one of the questions involved, and it is a question for the jury to decide. The requested instructions were calculated to give the jury to understand that the whole case depended on the possession of notice of the dog's character by appellant's servants. This, we think, is not correct. There is evidence that a rule of defendant prohibited the receipt of dogs for transportation unless they were boxed or crated. Upon this appellant requested and assigns as error the refusal of this charge:

"If you believe from the evidence that by the rules of defendant's company the company would not receive dogs to be shipped over its road without being boxed or crated, and that Mrs. Morgan attempted to deliver her dog to defendant company without being crated or boxed, then you are instructed that defendant company was not required to receive it, and unless the defendant company did receive the dog for shipment the defendant can not be held liable in this action."

This presented an irrelevant question. Appellant did receive and transport this dog; whether it was bound to do so or not had no bearing on the case.

As to the statements made by counsel for appellee in their argument, it is only necessary to say that they should not have been permitted to state facts about which there was no evidence. Reversed and remanded.

*Reversed and remanded.*