**VANCE v. OBADAL et al.**

No. 4914.

Court of Civil Appeals of Texas. El Paso.

Feb. 4, 1953.

Rehearing Denied Feb. 25, 1953.

Guinn & Guinn, El Paso, for appellant.

Schuyler B. Marshall and Burges, Scott, Rasberry & Hulse, El Paso, for appellees.

FRASER, Justice.

Appellant, J. L. Vance, brought suit against Adolph Obadal and his sister, Emma Obadal, operators of amusement devices in Washington Park in the city of El Paso, Texas, for injuries alleged to have been sustained by Appellant's wife, Jennie

Jo Vance, on August 5, 1951, while riding one of these said devices described as the "Double Loop-O-Plane", which was owned and operated by appellee, Adolph Obadal. Trial was to a jury on special issues, upon the answers to which both sides filed motions for judgment. The trial court granted the motion of appellees Obadal and entered judgment for them.

■ Appellant's first point complains of the action of the trial court in overruling his motion for judgment on the verdict of the jury. In answer to the several questions submitted the jury failed to find the Obadals guilty of any negligence in the conduct, maintenance and operation of the said "Double Loop-O-Plane". To be specific, the jury found in answer to Question No. 3 that the said device was not inherently dangerous because of its design and construction; in answer to Question No. 6 the jury found that the electrical wiring of said device was not defective at the time of this incident; the jury further found in answer to Question No. 9 that defendant, his agents, servants and employees did not operate the said device on or about August 5, 1951, and in which plaintiff and wife were riding, in such a manner as to cause a violent jerk.

Question No. 17 was as follows:

"Do you find from a preponderance of the evidence that the injury to plaintiff's wife was not the result of an unavoidable accident?"

to which the jury answered "No". In answer to Question No. 20 the jury answered that the failure of defendants to warn plaintiff and wife before they entered the said device as to the method and operation of same was not negligence. On the contrary, the jury did find that the injuries of Mrs. Vance were sustained in the course of the normal and usual operation of said Loop-O-Plane and arose from risks natural and obvious to such operation. (See answers to questions Nos. 27 and 28). The jury found in answer to Question No. 23 that her injuries "arose from risks naturally and obviously arising from the design and construction of the Loop-O-Plane" and in answer to Questions 22 and 24 that the design and construction and

manner and method of operation of said Loop-O-Plane were open and obvious to plaintiff and wife before they entered the same. We find, therefore, no basis for granting Appellant's motion for judgment. Under these findings to do so would make those operating similar amusement devices under similar circumstances, stand as insurers of their patrons. We do not conceive this to be the law. Murphy v. Steeplechase Amusement Co., Inc., 250 N.Y. 479, 166 N.E. 173, and the many cases cited therein. (Device known as "Flopper"); Waguespack v. Playland Corporation, La. App., 195 So. 368, (Loop-O-Plane); Williams v. Houston Baseball Association, Tex. Civ.App., 154 S.W.2d 874 (Patron of baseball park); Keys v. Alamo City Baseball Co., Tex.Civ.App., 150 S.W.2d 368.

This point is accordingly overruled.

■ In his second point appellant presents as error the action of the trial court in overruling his motion for new trial, and holding that there was not a conflict in the material findings of the jury rendering the verdict and the judgment thereon ineffective. Appellant points out:

"The jury in answer to the issue submitted found that appellant's wife was not guilty of any negligence and that her injury arose from risks naturally and obviously arising from the normal and usual operation of the Loop-O-Plane." (Appellant's brief, p. 4)

then in answer to issue No. 20, the jury found:

"the Appellee was not negligent in failing to warn Appellant and his wife of the method of operation."

and bases his position that these issues are in conflict on the statement

"It is obvious that if the normal operation of a machine will injure someone, as a matter of law such duty to warn would exist." (Appellant's brief p. 4.)

We do not find conflict in the findings of the jury. There was testimony that a great many people had safely ridden this device during that summer season, and the record is silent as to any injuries to other persons.

Testimony reveals that the said device was brilliantly lighted, and the jury found that the design and construction were open and obvious, and that the manner and method of operation of the device was open, obvious and *apparent* (emphasis ours) to plaintiff and his wife. They were mature people in apparent possession of their normal faculties. What then was there to warn these people about? The testimony and jury findings at best merely point out that Mrs. Vance was injured *while* (emphasis ours) riding said device, without specific finding as to exact time during said ride, or exact manner and means. Dr. S. Perry Rogers testified the type of injury sustained by her

"is not infrequently attributable to sneezing, to a sudden turning of the head, or to any movement of the body which would bring tension upon the bones of the neck."

Nor can we agree with appellant that the mere fact of injury to Mrs. Vance without negligence on her part during the normal operation of the device thereby makes it an inherently dangerous device, thus conflicting with the answer to Question No. 3, wherein the jury found that said device was not inherently dangerous. This is a clear case of Volenti non fit injuria. That which happened to plaintiff's wife is that which common experience tells us might happen to anyone, who in order to enjoy the devices commonly offered to the public for its amusement, accepts the normal dangers attendant thereto. Indeed, as Justice Cardozo observed in the case of Murphy v. Steeplechase Amusement Co., Inc., supra [250 N.Y. 479, 166 N.E. 174] "The timorous may stay at home."

The jury indicated by its answer to Question No. 17 that the affair was the result of an unavoidable accident. This finding seems to preclude any conflict in their answers to the various questions in the charge. As pointed out in our disposition of Appellant's first point, operators of amusement devices such as this one was, and under circumstances such as were here present, are not insurers of their patrons. Those who patronize such said amusement devices which are not inherently dangerous, and the method of construction and operation of which are unobscured and open to the view of the prospective patrons, voluntarily subject themselves to the ordinary risks attendant upon the normal operation of said device. Appellant's second point is accordingly overruled. For authorities reference is made to the cases cited in our discussion of appellant's first point.

Appellant's third point is here quoted:

"The undisputed evidence showing that the appellees testified falsely to material facts and that this perjury was not known and could not have been known to appellant prior to the trial the Honorable Trial Court erred in overruling appellant's Motion for a New Trial."

After careful and painstaking examination of the testimony and other matters presented on this appeal we are unable to find substantiation of this point (false testimony) in the evidence before us. Nor does it seem possible to justify the point on the ground of newly discovered evidence. The evidence itself and its sources force us to the conclusion that it must have been available to all parties before the trial. As we understand the rule, movant must show that diligence was exercised to obtain the evidence and successfully negative lack of diligence. Reed v. Beheler, Tex.Civ.App., 198 S.W.2d 625; 31 Tex.Jur., Sec. 81 et seq.; 31 Tex.Jur., Sec. 84 et seq. It does not seem to us that appellant has met this burden placed upon him by the laws of our state. The two matters complained of by Appellant consist of statements by Appellee, to-wit:

"Q. Do you know about how many people have ridden this Loop-O-Plane since, say, the first of July up to the present time?

"A. Well, I couldn't say accurate, but I should figure anywhere between thirty-five hundred to four thousand people. I wouldn't say exactly because I don't know."

and

"Q. You know as a matter of fact that they haven't made any since that time, don't you?

"A. No. I know that you can order one right now. You can get a catalogue and if you want to order one of them, you can order one right now, today, anytime, as long as you've got the money to pay for it."

It has been held that diligence has not been exercised if the same diligence used to procure the testimony subsequent to trial would have had the same result if exercised prior thereto. Hayman v. Dowda, Tex.Civ.App., 233 S.W.2d 466, and authorities cited therein. Motions for new trial on the ground of newly discovered evidence come within the discretion of the trial court. Williams v. Southern Life & Health Ins. Co., Tex.Civ.App., 208 S.W.2d 574; Texas Employers Ins. Association v. Evers, Tex. Civ.App., 242 S.W.2d 906; Texas Employers Ins. Association v. Moser, Tex.Civ.App., 152 S.W.2d 390; Ables v. Donley, 8 Tex. 331. We hold that the trial court did not abuse its discretion in overruling Appellant's motion. Appellant's third point is overruled.

Appellant's point four states that the trial jury received outside material evidence after retirement to consider its verdict, and a new trial should have therefore been granted by the trial court. After careful examination of testimony presented at the hearing on the motion for new trial as set forth in Appellant's brief, we fail to find any evidence in support of this point. Taken in its strongest sense it seems only to portray a discussion among the jurors. In fact, it is at best a revelation of the mental processes of the jurors. Such have been held to have no value and not subject to inquiry in the absence of an overt act of misconduct on the part of a juror or jurors. Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642; 31 Tex.Jur. Sec. 37 et seq.; 31 Tex.Jur. Sec. 144 et seq.

Appellant's fifth point is as follows:

"The Honorable Trial Court erred in refusing to permit the Appellant to show that the Appellee had sworn in garnishment proceedings that Adolph Obadal had no interest in a bank account in El Paso, Texas, when in the trial of this case Appellees' testimony was that only Adolph Obadal had any interest in the said account and that Emma Obadal had no interest therein."

Although there was no Bill of Exception presented, we have considered this point so that all issues might be resolved. The testimony of appellee Obadal is here included:

"A. In Emma Obadal by A. Obadal.

"Q. And whose funds are those? A. That's mine.

"Q. That's yours? A. That's right.

"Q. And you haven't ever stated to the contrary, that those funds are not yours? A. No I have never stated no contrary. Everybody knows I have carried a bank account thataway for fifteen years.

"Q. Now what bank do you keep that account in, in the name of Miss Obadal, here in El Paso? A. Right here in the El Paso National Bank."

Appellant sought to question Obadal on the matter of a garnishment not a part of this case, and objection was sustained to this line of questioning. Examination of the affidavit partly set forth in Appellant's brief shows that it was made by the attorney for Emma Obadal in answer to the said garnishment. It was not a statement by Obadal. The testimony in the case shows that there were three bank accounts, one personal account of Emma Obadal, a business account of Mr. Obadal and one carried in the name of Emma Obadal by A. Obadal. We cannot see that any proper purpose would have been served had Appellant been permitted to explore this garnishment stemming from another lawsuit in the presence of the jury in this case. Consequently there was no error in excluding it. On the basis of the testimony that there were three bank accounts as described above, the affidavit of Emma Obadal's attorney in the garnishment suit does not even contradict the testimony of appellee Obadal. This point is therefore, along with all other points presented by Appellant, overruled.

Finding no error, the judgment of the trial court is affirmed.