Ruby Mae **LEWIS**, Appellant,

v.

**GREAT SOUTHWEST CORPORATION**
et al., Appellees.

No. 17251.

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 15, 1971.

Rehearing Denied Nov. 19, 1971.

Fred H. Benners, Dallas, for appellant.

Cantey, Hanger, Gooch, Cravens & Munn, David O. Belew, Jr., Richard L. Griffith, and S. G. Johndroe, III, Fort Worth, for appellees.

## OPINION

LANGDON, Justice.

Ruby Mae Lewis, a feme sole, the plaintiff, sued Great Southwest Corporation and Six Flags Over Texas, the defendants, for damages for personal injuries sustained by her as the result of being struck (butted down) by a domestic goat which was owned, maintained and exhibited by the defendants in a "petting zoo" or amusement park owned by them.

The plaintiff's suit is founded upon (1) strict liability for breach of implied warranty of safety of defendants' product, its goat exhibit; (2) strict liability for the keeping and maintenance of animals of dangerous propensities; and (3) negligence in failing to have an attendant on duty at the time in question to help make the exhibit safe.

At the conclusion of plaintiff's case before a jury the trial court granted the motions of the defendants for directed verdicts, withdrew the case from the jury and entered judgment on behalf of both defendants.

This appeal by the plaintiff-appellant is from such judgment based upon three points of error.

Appellant by her first two points contends that the evidence established conclusively that defendants' goat exhibit was defective, in breach of defendants' implied warranty and therefore rendered defendants strictly liable for plaintiff's damages resulting therefrom, and that such evidence raised jury issues as to whether defendants' failure to have adequate attendants on duty in the petting zoo was negligence and a proximate cause of plaintiff's injuries. The third point asserts that under the evidence defendants are strictly liable for damages resulting from defendants keeping and exhibiting such an animal with the natural propensity to butt and do harm.

We affirm.

Plaintiff purchased a ticket and entered the premises of defendants' place of amusement on July 21, 1966, accompanied by her son, A. C. Lewis, and her grandchildren. All of them entered the "Animal Kingdom", or "petting zoo" exhibit. The plaintiff was pushing a baby stroller containing her 2 year old grandson. The petting zoo contained approximately 40 animals including goats, sheep and pigs. No signs were posted warning of any dangerous animals nor signs warning patrons that they entered at their own risk. There is an attendant in the petting zoo. His sole purpose was to pick up trash and to keep children from mistreating the animals. "He has a little broom and a dustpan." All of the animals in the petting zoo are raised by the defendants. On July 21, 1966, all of the goats (with the exception of two females of three years of age) were not older than six months of age. All male goats in the exhibit were castrated at birth. Patrons of the exhibit are encouraged to

touch, feed and pet the animals. Plaintiff, a 57 year old woman, was knocked down by one of the goats in the petting zoo when it struck her in the knee. She was knocked loose from her hold on the baby stroller and fell to the concrete floor. One of her shoes fell off at this time. The goat was standing over the plaintiff and was moved away or "shooed" by plaintiff's son and another person. Immediately prior to the incident, there had been no harassment of the animals and nothing had occurred which would be calculated to cause excitement to the animals. Plaintiff was raised on a farm and was familiar with the nature and habits of goats. She had observed others feeding the goats in the petting zoo, but she had not been feeding them. The goat on its own volition, without any warning or indication of its intentions, "butted" the plaintiff. There was no time element involved because there was no previous indication of what was to happen. It just did.

Appellant, under her first and third points of error, seeks to invoke the rule of strict liability in warranty against these defendants, on the same theory as that employed in products liability cases. The latter type cases involve a transfer of possession or sale of a product, whereas the only "implied warranty" applicable to a patron of an amusement park or an entertainment establishment open to the public is that, "Those who conduct places of public amusement to which an admission fee is charged owe the duty to exercise ordinary care for the safety of their patrons" (Marek v. Southern Enterprises, Inc., of Texas, 128 Tex. 377, 99 S.W.2d 594, 596 (Tex.Com.App., 1936)) and the duty to use reasonable care to protect her from dangers that could reasonably be anticipated. "The evidence does not * * * establish a breach of that duty or any causal connection between such an alleged breach and the plaintiff's injury." Whitfield v. Cox, 189 Va. 219, 52 S.E.2d 72, 76.

The theory of strict liability under any warranty theory is not applicable to the facts of this case. It is well settled that operators of public places of amusement, rodeos, wild west shows, theatres and the like, are not insurers of their patrons' safety. Dalton v. Hooper, 168 S.W. 84, 85 (Dallas, Tex.Civ.App., 1914, no writ hist.); Zuniga v. Storey, 239 S.W.2d 125 (San Antonio, Tex.Civ.App., 1951, writ ref., n. r. e.); Vance v. Obadal, 256 S.W. 2d 139 (El Paso, Tex.Civ.App., 1953, writ ref.); East Texas Theatres, Inc. v. Rutledge, 453 S.W.2d 466 (Tex.Sup., 1970).

There are no pleadings, evidence, or points of error pertaining to the application of the doctrine of res ipsa loquitur, " * * * we cannot indulge a presumption of negligence from the happening of the accident, and the burden of proving such negligence rests upon appellant." Henry v. Publix Theatres Corporation, 25 S.W.2d 695, 698 (Dallas, Tex.Civ.App., 1930, writ ref.).

Appellant's pleadings based upon warranty constitutes merely a general plea of negligence and is not applicable to the evidence produced in the trial court. The trial judge properly refused this theory as applied to the evidence as a matter of law. Assuming that a general plea of negligence is permissible, the record does not show any breach of a legal duty. The owner of a domestic animal is not liable for injuries caused by it in a place where it has a right to be, unless the animal is of known vicious propensities or the owner should know of the vicious or unruly nature of the animal. Clarendon Land Inv. & Ag. Co. v. McClelland, 89 Tex. 483, 34 S.W. 98 (1896); 3 Tex.Jur.2d, Animals, § 39, p. 114.

In Dawkins v. Van Winkle, 375 S.W.2d 341, 343 (Waco, Tex.Civ.App., 1964, writ dism'd, w. o. j., at 377 S.W.2d 830) the court said:

"Our view of this record is that there is no evidence of probative force that the bull was vicious or had vicious propensities which were known to appellee; * * *. As we understand the rule of law here ap-

plicable it only imposed upon the defendant and his employees the duty to use that degree of care that an ordinary prudent person would have used * * *. The burden was on plaintiffs to show that such care was not used * * *. See Carson v. Knight (Com.App.), 294 S.W. 539 * * * D-Bar Ranch v. Maxwell, Tex. Civ.App., 170 S.W.2d 303 (w. o. m.)."

■ The appellees-defendants were not guilty of any breach of duty in merely owning, keeping and offering to the public for display a herd of female and stag domestic goats.

"That which happened to plaintiff's wife is that which common experience tells us might happen to anyone, who in order to enjoy the devices commonly offered to the public for its amusement, accepts the normal dangers attendant thereto. * * * Justice Cardozo observed in the case of Murphy v. Steeplechase Amusement Co., Inc., * * * (250 N.Y. 479, 166 N.E. 172, 174) 'The timorous may stay at home.'" Vance v. Obadal, 256 S.W.2d 139, 141, supra.

"Volenti non fit injuria. One who takes part in such a sport accepts the dangers that inhere in it so far as they are obvious and necessary, just as a fencer accepts the risk of a thrust by his antagonist or a spectator at a ball game the chance of contact with the ball. * * *" Murphy v. Steeplechase Amusement Co., 250 N.Y. 479, 166 N.E. 173 (N.Y.Ct. of App., 1929).

By her third point of error, appellant charges that the defendants are strictly liable for keeping and exhibiting such an animal "with the natural propensity to butt and do harm." Under this record there is no evidence. that any of the goats in the "petting zoo" had ever evidenced any dangerous propensity prior to the incident in question.

In 4 Am.Jur.2d, Animals, Sec. 2, page 251, it is said:

"Generally, the present day classification of animals, and one which has been recog- nized from the earliest date of recorded history, is twofold: wild or ferae naturae, and domestic or domitae naturae. Animals ferae naturae are such as are of a wild nature or disposition and so require to be reclaimed and made tame by art, industry, or education, or else must be kept in confinement to be brought within the immediate power of the owner. Animals domitae naturae, on the other hand, are those which are naturally tame and gentle or which, by long continued association with man, have become thoroughly domesticated and are now reduced to such a state of subjection to his will that they no longer possess the disposition or inclination to escape. The class of domestic animals includes cattle, horses, sheep, goats, pigs, poultry, cats, and all other animals which by habit or training live in association with man. * * *"

Under the record in this case we are dealing with a plain ordinary goat which is classified as a domestic animal and comes under the following rule:

"With regard to an animal not naturally vicious, the general rule, in the absence of statute, is that the owner of the animal is not answerable for injuries done by it when in a place where it had a right to be, unless it was, in fact and to the owner's knowledge, vicious or dangerous. If being theretofore of a peaceable disposition, it suddenly and unexpectedly, while in the charge of its owner or his servants, inflicts injury on another, neither, if at that time due care was exercised, is answerable." 4 Am.Jur.2d, Animals, § 86, p. 332.

In an effort to impress the rule of strict liability under her first and third points of error, the appellant cites Copley v. Wills, 152 S.W. 830 (Dallas, Tex.Civ.App., 1913, no writ hist.). That case is distinguishable from the one at bar in that it involved injury to a plaintiff by a monkey harbored by the defendant. The court properly classified the monkey as an animal "ferae naturae or of a wild nature or disposition, and a different rule of liability obtains in case of injuries inflicted by such animals."

The rule applicable to domestic goats is the same as for domestic dogs as stated in Hill v. Palms, 237 S.W.2d 455, 456 (Amarillo, Tex.Civ.App., 1950, no writ hist.) :

"The law governing cases of this kind is so well settled and has been reiterated in so many decisions of our courts that an extended discussion of it here is not necessary. It has been held in many cases, and without exception as far as we know or are able to ascertain, that the owner of a dog is not liable for injuries caused by it unless it is vicious and knowledge or constructive notice of that fact is shown or brought home to the owner. It is necessary in such cases to show by the evidence that the owner of the dog either knew of its disposition to injure persons or property or that he had knowledge of facts which would put a person of ordinary prudence on notice that permitting his dog to run at large might result in assaults or depredations by the dog and consequent injury to others. Dakan v. Humphreys, Tex.Civ. App., 190 S.W.2d 371; Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073; Kallum v. Wheeler, 129 Tex. 74, 101 S.W.2d 225; Herring v. Schingler, Tex. Civ.App., 101 S.W.2d 394; Trinity & S. Ry. Co. v. O'Brien, 18 Tex.Civ.App. 690, 46 S.W. 389."

Admittedly, there are cases of liability involving domestic animals knocking down pens at rodeos and stockyards, etc. The philosophy involved in such cases is well summarized in Zuniga v. Storey, 239 S.W. 2d 125, 127 (San Antonio, Tex.Civ.App., 1951, writ ref., n. r. e.) wherein the court said: "It may be that a Brahman bull in his natural surroundings is a comparative inoffensive creature. In his native India, he is regarded as a sacred animal, but on July 14, 1944, this particular bull, 'Hitler,' much against his will, was acting as a performer in a wild west show and rodeo. He was not being subjected to the treatment ordinarily accorded to domestic animals and we think a distinction may well be made between Blackie, the yard dog and Elsie, the milch cow, on the one hand, and

Hitler, the sorely beset and tormented bull, upon the other hand. Animals subjected to the treatment they receive in rodeo shows become frightened, infuriated and hence dangerous, and appellees are charged with knowledge of this fact."

In the present case there is no evidence that any of the goats in the "petting zoo" were frightened, tormented or infuriated. The evidence is quite clear that there was no harassment of the animals and that nothing whatsoever occurred unexpectedly or otherwise to excite the particular goat involved or any other goat, and that nothing was seen or heard which would indicate that the animals had been aggravated, teased, or molested.

Appellant argues that, based on her previous farm knowledge, she would not have gone into the petting zoo had she known that the animals were not all females, since "billygoats" are known to butt people. It was established by the testimony that all males in the herd had been castrated since birth. It follows that a castrated male goat is no longer a "billy" goat. Further the evidence is clear that appellant was struck by "one of the relatively larger goats in the pen." The particular goat involved in this case was never identified. The record reflects that there were only two large goats in the exhibit at the time in question and they were both females.

Appellees contend that aside from whether or not a true "male" (Billy Goat) did the injury, it would not appear to make any difference according to Young v. Blaum, 146 So. 168, 169 (La.App., 1933), the only case of record involving goats. In that case it was said that the "Plaintiff first contends that males goats in general are vicious and dangerous animals, quite unlike females goats and other domestic animals, and therefore constitute such potential danger that owners should be held responsible for any damage resulting from an attack upon a person regardless of any previous showing of viciousness. Her counsel argues that, while the male goat

may not come under the classification of animals 'ferae naturae,' such as a bear or a lion or a tiger, it should not be classified as an ordinary domestic animal such as a dog, horse, or cow. His argument apparently suggests a third classification for such animals. This point is predicated upon the testimony of Dr. Chapman, a veterinarian, who stated that, while a male goat is generally considered as a domestic animal, he considers it of a mean and tricky temperament unlike the female goat, which is docile and quiet, and that this is particularly true when the goat is confined. Counsel has not cited any authority to the effect that there is a third classification of animals such as he contends for, and a careful reading of Dr. Chapman's testimony fails to convince us that a male goat is of such a vicious or ferocious nature as to make it proper to say that an owner of such an animal harbors it at his peril. It is our opinion that a male goat falls into the category of domestic animals, and the owner is responsible in damages caused by it only where he has previous knowledge of its vicious propensities."

We find and hold that under the evidence in this record viewed in the light of prevailing authority that, as a matter of law, no rule of strict liability may be applied against the defendants in this case because there is no evidence (1) of prior knowledge on the part of appellees as to danger; (2) that appellees should have been on notice of danger; and (3) the domestic goats in question were not by law "naturally" dangerous.

The appellant appears to be urging that all of the following facts should be presumed: (1) that no attendant was present at the time in question; (2) that the attendant's duty was to protect patrons of the exhibit; (3) that it was known to be necessary that the patrons be protected from the act that occurred; (4) that the attendant would have anticipated the danger; and (5) that the attendant could have acted in time to prevent the injury. It would appear to us that only the first of the above five presumptions can be indulged. That is the presumption that the attendant with the broom and the dust pan was absent at the particular time of the incident in question.

"It was held in the case of Ft. Worth Belt Ry. Co. v. Jones, 106 Tex. 345, 166 S. W. 1130, 1132, that 'a presumption of fact cannot rest upon a fact presumed. The fact relied upon to support the presumption must be proved. "No inference of fact should be drawn from premises which are uncertain. Facts upon which an inference may legitimately rest must be established by direct evidence, as if they were the facts in issue. One presumption cannot be based upon another presumption."'" Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791, 794 (1955).

As stated in Wells v. Texas Pac. Coal & Oil Co., 140 Tex. 2, 164 S.W.2d 660, 663 (1942): "'* * * Even though the original presumption be indulged, the law does not permit the pyramiding of one assumption upon another because an ultimate fact thus arrived at is too conjectural and speculative to support a judgment. * * *'"

"'A verdict or finding may be based on inferences fairly drawn from the facts in evidence. An inference cannot be based on surmise or speculation, and is without probative force if inconsistent with undisputed or clearly established facts.'" Briones v. Levine's Department Store, Inc., 446 S.W.2d 7 (Tex.Sup., 1969).

Splaine v. Eastern Dog Club, 306 Mass. 381, 28 N.E.2d 450 (1940) involves a case in which the plaintiff was bitten by a show dog at the defendant's dog show. The evidence was undisputed that there was no one on duty in the exhibition hall to keep the aisles clear. The Massachusetts Supreme Judicial Court held, at page 452:

"The presence of dogs on the premises was an essential feature of the show. And it could not have been found that it was unreasonable to permit dogs to be taken

through the aisles for purposes incident to the show such as the purpose of being taken out for exercise. * * * Doubtless the defendant should have foreseen and guarded against any probable harmful consequences of the presence of many dogs at the show of dogs being confined to benches or stalls for considerable periods and of exhibitors passing through aisles with dogs. But we think that, even in the circumstances of a dog show, it could not rightly have been found that the injury to the plaintiff in its general nature was a probable consequence of the failure of the defendant to take precautions, by providing attendants or otherwise, to prevent a dog on exhibition from remaining in the aisle for a period of five or ten minutes, * * * or to guard against such dog—having no dangerous propensities known, or that should have been known—biting an exhibitor passing through the aisle with another dog."

Under the facts of the case at bar " ' * * * nothing short of prophetic ken could have anticipated the happening of the combination of events which resulted in the injury of the person of the plaintiff.' Texas & P. Ry. Co. v. Bigham, 1896, 90 Tex. 223, 38 S.W. 162. * * * (appellees) had 'neither a legal nor a moral obligation to guard against that which cannot be foreseen.' " Parker Food Stores, Inc. v. Pierce, 374 S.W.2d 699, 706 (Fort Worth, Tex.Civ.App., 1964, writ ref., n. r. e.).

Attacks against the common law rule of protection for the keeper or the owner of a domestic animal have been frequently but unsuccessfully raised by those who seek the imposition of a new rule charging the owner/keeper with responsibility for damages regardless of the animal's nature, prior history or disposition to inflict injury, claiming that the common law rule is archaic and outmoded.

In response to such attacks upon the common law rule the court in Hill v. Palms, 237 S.W.2d 455, 457, supra, said "Regardless of the logic of this argument, the common law of England constitutes the rule of decision and continues to be in force in this State until it is altered or repealed by the legislature. The law in respect to the matters here involved has not been altered or repealed by the legislature and the courts are without authority to change it in any respect. The cases above cited and the many others cited by them show that the courts of this state have adhered strictly to the rule from the early days of the history of our jurisprudence until the present and we have no alternative but to hold in accordance with them."

Aside from the logic of the law, we agree with the appellees that from the standpoint of public policy the continuation of an exhibit such as the petting zoo is beneficial to inhabitants of all ages who reside in the thickly populated metropolitan areas. Everyone is entitled to a touch of farm life. Without such exhibits and "petting zoos" many children and adults might not otherwise ever see, much less touch, feed and pet, an actual living and breathing farm animal. Such a benefit must of necessity outweigh the risk that a lively and frolicsome animal might, by sheer unprovoked accident, do injury to a bystander. Further, the absolute necessity for survival of man by the keeping of herd animals reflects the propriety in this present day of the continuing wisdom of the common law. "The timorous may stay at home" and by doing so be denied down to earth bucolic adventures.

All points of error are overruled. The judgment of the trial court is affirmed.