NO. 07-09-0241-CV

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL A

 

 SEPTEMBER 1, 2010



 

 



 

 

KELLY KANTON LABAJ AND THIRD COAST AUTO GROUP, LP, APPELLANTS

 

v.

 

DEEANN VANHOUTEN, APPELLEE 



 

 



 

 FROM THE 353RD DISTRICT
COURT OF TRAVIS COUNTY;

 

NO. D-1-GN-08-000492; HONORABLE SCOTT JENKINS, JUDGE



 

 



 

 

Before CAMPBELL and HANCOCK and PIRTLE,
JJ.

 

 

OPINION

Appellants, Kelly Kanton Labaj and Third Coast Auto Group, LP (collectively "TCAG"),
appeal from a judgment rendered in favor of Appellee, DeeAnn VanHouten,
following a jury trial of her dog bite case. 
VanHouten was awarded $50,000 in actual damages.  TCAG asserts the trial court erred in failing
to grant its motions for:  (1) summary
judgment; (2) directed verdict; and (3) a new trial because there was no
evidence that the dog in question had dangerous propensities that were abnormal
for an animal of her class.  We
affirm.  

Background

            In May
2007, TCAG operated a used car lot in Travis County, Texas.  VanHouten was a TCAG employee working at the
lot as a title clerk.  On May 30,
VanHouten left the front office to check her car for licensing papers.[1]  When she reached the garage, she asked Jose
Salguero where her car was located.  He
indicated her car was in the back lot.  VanHouten was unaware there was a dog on the
back lot.

            As VanHouten was walking through the
back lot, she saw a Ford Mustang in the "make ready" area[2] that she thought she might
like to purchase.  As she was looking in
the Mustang, she heard a movement or rustle and
observed the roof of a doghouse through the car's rear window. Believing a dog
might be nearby, she decided to walk away. 
At that moment, a dog came from behind the Mustang and startled
VanHouten.  She froze and the dog lunged,
attached its jaws to her leg, began shaking her, and pulled her to the
ground.  When her screams were heard in
the repair garage, Jose approached and removed the dog.  A portion of VanHouten's leg muscle had been detached
from her leg during the attack.  An
ambulance was called and VanHouten was taken to a local hospital.      

            VanHouten subsequently filed suit
alleging in her amended petition three theories of liability against TCAG:  (1) strict liability, (2) negligent handling,
and (3) negligence.  Under the first
theory, she alleged TCAG was liable for her injuries because they knew or
should have known of the dog's dangerous and vicious propensities.  Her second theory alleged TCAG failed to
exercise reasonable care to prevent the dog from injuring her.  And, her third theory alleged TCAG failed to
keep the premises safe, properly contain the dog, or warn others of its
presence.

            Following a two day trial, the trial
court submitted the following Questions to the jury, in pertinent part, and received
the following answers:

QUESTION NO. 2. 


            At the time of the
occurrence in question, did [the dog] have dangerous propensities abnormal to
its class?

ANSWER:  No.

QUESTION NO. 5. 


            On the occasion in question,
was VanHouten an invitee on that part of [TCAG's] premises
under consideration?

ANSWER:  Yes.

QUESTION NO. 6. 


            Did the negligence, if any,
of those named below proximately cause the occurrence in question?  

ANSWER:  Yes [as to Labaj and TCAG].

            

In accord with the jury's verdict, the trial court
issued a judgment awarding $50,000 in actual damages to VanHouten.  Thereafter, TCAG filed a motion for new trial
asserting VanHouten's evidence was legally insufficient because she failed to
show the dog had dangerous propensities. 
TCAG's motion was denied and this appeal followed.

            Issues
One and Two:  Summary Judgment and
Directed Verdict

            TCAG appeals the trial
court's denial of its motions for summary judgment and directed verdict asserting
VanHouten failed to prove as a matter of law that the dog in question had dangerous
propensities that were abnormal for an animal of her class. 

            Neither ruling by the trial court is
reviewable on appeal.  Texas law is
settled that the denial of a motion for summary judgment may not be challenged
on appeal from a final judgment following trial.  Ackermann v. Vordenbaum, 403 S.W.2d 362, 365 (Tex. 1966).  See Moore v. Jet Stream Investments, LTD., 261 S.W.3d 412, 427
(Tex.App.--Texarkana 2008, pet. denied) (collected cases cited therein).[3]  Texas law is also settled that a defendant
who moves for a directed verdict after the plaintiff rests, but thereafter
elects not to stand on his motion for directed verdict and proceeds with the
presentation of evidence, waives any complaint regarding the denial of that
motion.  Natural Gas Clearinghouse v. Midgard Energy Co., 113 S.W.3d 400,
412 (Tex.App.--Amarillo 2003, pet. denied) (citing Cliffs Drilling Co. v. Burrows, 930 S.W.2d 709, 712
(Tex.App.--Houston [1st Dist.] 1996, no writ)). 
See Vermillion
Constr. Co. v. Fidelity & Deposit Co. of Maryland, 526 S.W.2d 744, 748
(Tex.App.--Corpus Christi 1975, no writ) (collected cases cited therein).  Accordingly, TCAG's first two issues are
overruled.

            Issue Three  

            TCAG asserts the trial court
erred in denying its motion
for a new trial for the single reason that the jury did not find that the dog
in question had dangerous propensities which were abnormal for an animal of her
class.  A motion for a new trial is a
proper predicate for preserving a legal sufficiency challenge.  Aero Energy, Inc. v. Circle C Drilling Co., 699 S.W.2d 821, 822
(Tex. 1985).  See Allison v. Acel Parks, 763 S.W.2d
606, 607 (Tex.App.--Fort Worth 1989, pet. denied).

            Standard of review

            In reviewing rulings on motions for
directed verdicts, motions for new trial based on no-evidence and judgments
notwithstanding the verdict, appellate courts apply the no-evidence
standard.  See City
of Keller v. Wilson, 168 S.W.3d 802, 823 (Tex. 2005); McGuire, Craddock,
Strother & Hale, P.C. v. Transcontinental Realty, 251 S.W.3d 890, 895
(Tex.App.BDallas 2008, pet. denied); Arroyo Shrimp Farm, Inc. v. Hung Shrimp
Farm, Inc., 927 S.W.2d 146, 149 (Tex.App.--Corpus Christi 1996, no pet.).  The court considers the evidence in a light
most favorable to the challenged finding, indulges every reasonable inference
to support it; Wilson, 168 S.W.3d at
822, credits favorable evidence if reasonable jurors would and disregards
contrary evidence unless reasonable jurors would not.  Id. at 827.  

            A challenge to the legal sufficiency of evidence will be
sustained when, among other things, the evidence offered to establish a vital
fact does not exceed a
scintilla.  Kroger Tex. Ltd. P=ship v. Suberu, 216 S.W.3d 788, 793 (Tex. 2006).  Evidence does not exceed a scintilla if it is
Aso weak as to do no more than create
a mere surmise or suspicion@ that the fact exists.  Ford Motor Co. v. Ridgway, 135 S.W.3d
598, 601 (Tex. 2004)(quoting Kindred v. Con/Chem, Inc. 650 S.W.2d 61, 63 (Tex. 1983)).  And, so long as the evidence falls within the zone of reasonable
disagreement, we may not invade the fact-finding role of jurors, who alone
determine the credibility of witnesses, the weight to be given their testimony,
and whether to accept or reject all or part of their testimony.  Wilson,
168 S.W.3d at 822. 

            Negligent Handling

            TCAG asserts VanHouten could only
establish her negligence action if she proved TCAG knew or should have known
the dog had dangerous propensities that were abnormal to her class.  Because the jury answered "No" to
Question 2 and   determined that the dog
did not have dangerous propensities
abnormal to her class, TCAG asserts VanHouten's evidence was legally
insufficient to establish TCAG was negligent in handling or keeping the dog. 

            If
an animal is vicious or has aggressive tendencies and the owner has knowledge
of that propensity, the owner can be subject to liability under the law of
strict liability.  Marshall v. Rannes, 511 S.W.2d 255, 258 (Tex. 1974); Belger v.
Sweeney, 836 S.W.2d 752, 754 (Tex.App.--Houston
[1st Dist.] 1992, writ denied).  However, if an animal is non-vicious, the
owner may still be subject to liability for negligent handling of the
animal.  Marshall, 511 S.W.2d at 258.  Therefore, generally, "[t]he gist of an
action to recover for injury caused by a domestic animal, resulting from
something other than known propensities, is usually negligence of the owner or
keeper in the keeping or handling of the animal."  Koepke
v. Martinez, 84 S.W.3d 393, 396 (Tex.App.--Corpus Christi 2002, pet.
denied) (citing Dunnings v. Castro, 881
S.W.2d 559, 562 (Tex.App.--Houston [1st Dist.] 1994, pet. denied)).  

            The
Restatement (Second) of Torts addresses the liability for harm caused by
domestic animals that are not abnormally dangerous and provides that "one
who possesses . . . a domestic animal that he does not know or have reason to
know to be abnormally dangerous, is subject to liability for harm caused by the
animal if, but only if, (a) he intentionally causes the animal to do harm, or
(b) he is negligent in failing to prevent harm."  Restatement (Second) of
Torts § 518 (1977).  Comment (h)
to section 518 states:

One who keeps a domestic animal that possesses only those dangerous
propensities that are normal to its class is required to know its normal habits
and tendencies.  He is therefore required
to realize that even ordinary gentle animals are likely to be dangerous under
particular circumstances and to exercise reasonable care to prevent foreseeable
harm . . . .  So, too, the keeper of an
ordinary bitch or cat is required to know that while caring for her puppies or
kittens she is likely to attack other animals and human beings.

Id. § 518 cmt. (h).

            Thus,
an owner of a dog may be liable for injuries caused by the dog even if the
animal is not vicious, if the plaintiff can prove the owner's negligent
handling or keeping of the animal caused the injury.  Dunnings,
881 S.W.2d at 562-63. 
          To recover on such a
claim, a plaintiff must prove:  (1) the
defendant was the owner or possessor of the animal; (2) the defendant owed a
duty to exercise reasonable care to prevent the animal from injuring others;
(3) the defendant breached that duty; and (4) the defendant's breach
proximately caused the plaintiff's injury. 
Thompson v.
Curtis, 127 S.W.3d 446, 451 (Tex.App.--Dallas 2004, no pet.) (citing Allen ex rel.
B.A. v. Albin, 97 S.W.3d 655, 660 (Tex.App.--Waco 2002, no pet.)).    

            Whether
a duty exists is a threshold question of law that we decide from the facts
surrounding the case.  Allen, 97 S.W.3d at 665 (citing Thapar v. Zezulka, 994 S.W.2d 635, 637
(Tex. 1999)).  In cases where a person is
injured on the premises of another, including dog bite cases, the duty owed by
the landowner depends on the status of the person injured on the premises.  Rosas v. Buddies Food Store, 518 S.W.2d 534, 536 (Tex. 1975).  See Dunnings, 881 S.W.2d at 563; Gill v. Rosas, 821 S.W.2d 689, 691 (Tex.App.--El Paso 1991, no
pet.); Searcy v. Brown, 607 S.W.2d
937, 941 (Tex.App.--Houston [1st Dist.] 1980, no writ); Arrington Funeral Home v. Taylor, 474 S.W.2d 299, 302 (Tex.Civ.App.--Eastland
1971, writ ref'd n.r.e.). 
"If the plaintiff [is] on the premises as an invitee, it [is] the
defendant's duty to exercise ordinary care to keep his premises in a reasonably
safe condition, so that the plaintiff would not be injured; on the other hand,
if the plaintiff [is] on the premises merely as a licensee, the only duty that
the defendant owe[s] him [is] not to injure him willfully, wantonly or through
gross negligence."  Searcy, 607 S.W.2d at
941.  Here, TCAG does not contest
the jury's determination that VanHouten was an invitee.[4]  Accordingly, TCAG owed a duty to VanHouten to
exercise reasonable care to keep its premises in a reasonably safe condition so
as not to injure her.  See Dunnings, 881
S.W.2d at 563; Gill, 821
S.W.2d at 689; Rosas, 518 S.W.2d at
536.  

            Whether
a duty exists, in dog bite cases, also depends to some degree on proof of
whether the risk of injury from a dog bite is foreseeable, i.e., the dog owner's actual or
constructive knowledge of the danger presented by his dog.  Gill,
821 S.W.2d at 691; see Dunnings, 881
S.W.2d at 564.  A party should not be
held responsible for the consequences of an act that cannot be reasonably
foreseen; Dawkins, 375 S.W.2d at 344,
and there is no duty to warn of danger when no danger is anticipated.  Watkins v. Beiker, 579 S.W.2d 519, 522 (Tex.Civ.App.--Tyler 1979,
no writ).  

            Where
the owner or keeper of a dog owes someone a duty of reasonable care to prevent
the animal from harming them, the law is clear that liability may attach even
though the injured person does not establish the dog had dangerous propensities abnormal to its class.  Bushnell v. Mott, 254 S.W.3d 451, 452 (Tex. 2008); Marshall, 511 S.W.2d at 259.  See  Allen, 97 S.W.3d
at 660; Dunnings, 881 S.W.2d at 562-63.  Thus, a plaintiff satisfies his burden of
proof by establishing that the owner had actual or constructive notice of facts
that would put an ordinary person on notice that the animal could cause harm
and the owner was negligent in preventing such harm.  Hill v. Palms, 237 S.W.2d 455, 456 (Tex.App.--Amarillo 1950, no writ.).  See Dunnings,
881 S.W.2d at 563-64; Dawkins v. Van
Winkle, 375 S.W.2d 341, 344 (Tex.Civ.App.--Waco), writ dism'd w.o.j., 377 S.W.2d 830 (Tex. 1964).   Whether the owner had actual or constructive
notice is a question of fact for the jury. 
See Pate v.
Yeager, 552 S.W.2d 513, 516 (Tex.Civ.App.--Corpus Christi 1977, writ ref'd
n.r.e.).  

            Steven
Quiroz, TCAG's manager, testified at trial that the dog had been on the lot for
several weeks before the incident.[5]  The dog was on the lot as a guard dog and was
intended to deter anyone from vandalizing or stealing parts from cars parked on
its lot.  Quiroz testified the dog was
chained to a fence nine to twelve hours a day and let loose in the lot at
night.  He described the dog as an
aggressive security guard who he "just didn't want to have an encounter
with . . . period."  He also
described the dog as a pit bull, a "more aggressive breed than [an] average
dog."  "It was a big dog, he would not have gone up to the dog specifically to
pet it."  "His main thought was
during the day that thing--the dog better be, you know, put up because,
obviously, we have clientele and we have workers there, so that was my main
concern."

            Quiroz
went on to testify he had no knowledge of the dog's history but the dog had
"no known biting [or] dangerous propensities" prior to the incident.  That said, when asked if he forgot something
at the lot whether he would return at night, Quiroz answered he "would not
go into the office if the pit bull were free," but would "wait until
the next morning."  He also
testified that, approximately a week and a half before the incident, the pit
bull had puppies and "generally a dog that has just had puppies is going
to be in the frame of mind to protect those puppies."  He also admitted he "didn't take any
precautions" to protect employees or customers from the dog, and that "anybody
could have come through the gate" into the area where the dog was kept
chained during the day.  There were no signs
warning of the presence of a guard dog on the lot.  Gina Salguero, Jose's wife, testified that,
prior to the incident, the dog had escaped from TCAG's lot and was hit by a
car.  The dog suffered a cracked hip in
two places and a bladder injury but was recuperating on its own.[6]

            Under
these circumstances, we cannot say that the evidence is "so weak as to do
no more than create a mere surmise or suspicion" that Quiroz had actual or
constructive notice of facts that would lead a reasonable person to the
conclusion that the dog could cause harm, or react with aggression, if an
employee or customer unwittingly came upon the dog at the lot.  Quiroz characterized the dog as
"big" and "aggressive." 
He also described the dog's breed as "more aggressive" than
the average dog.  Although he was
concerned for his own safety around the dog as well as the safety of his
clientele and employees, he testified he took no precautions to protect them.  Furthermore, the dog was injured and caring
for its pups.  

            Quiroz's
testimony establishes that, without adequate precautions, it was foreseeable
that the dog might harm the public and/or TCAG's employees.[7]
  Accordingly, we find TCAG owed a duty to
see that invitees were adequately warned of the dog's presence and the dog was
in no position to attack such persons.  See Arrington
Funeral Home, 474 S.W.2d at 302.  See also
Dunnings, 881 S.W.2d at 563-64.  Having
reviewed the entire record, we also find there is more than a scintilla of
evidence to support the jury's determination that TCAG breached its duty and
proximately caused VanHouten's injuries. 
Accordingly, we hold VanHouten's evidence of TCAG's negligence was legally
sufficient.   

            "Where it was supposed to be"   

            TCAG
also contends that because VanHouten did not prove the dog had dangerous
propensities that were abnormal for that class of animal, it cannot be held
liable for the incident because the dog "was where it was supposed to be."  

            The
"where it is supposed to be" rule is simply a restatement of the test
for strict liability.[8]  This rule was first stated in Lewis v. Great Southwest Corporation,
473 S.W.2d 228, 231 (Tex.Civ.App.--Fort Worth 1971, writ ref'd n.r.e.) in that
portion of the opinion analyzing the plaintiff's strict liability claim as
follows:

With regard to an animal not naturally vicious, the general rule, in
the absence of a statute, is that the owner of the animal is not answerable for
injuries done by it when in a place where it had a right to be, unless, it was,
in fact and to the owner's knowledge, vicious or dangerous.  If being therefore of a peaceable
disposition, it suddenly and unexpectedly, while in the charge of its owner or
his servants, inflicts injury on another, neither, if at that time due care was
exercised, is answerable.  4 Am.Jur.2d,
Animals, § 86, p. 332.  

Id. at 231. 

            Further,
the cases cited by TCAG are inapposite. 
In these cases, a pet dog either bit someone on the homeowner's premises;
Searcy, 607 S.W.2d at 939, 941
(licensee on the owner's property); Rodriquez
v. Haddock, No. 02-01-0386-CV, 2003 Tex. App. LEXIS 2940, at *2
(Tex.App.--Fort Worth April 3, 2003, no pet.) (not
designated for publication) (guest bitten in owner's
home); Petry v. Gasca, No. A14-93-00433-CV, 1994 Tex. App. LEXIS 821, at *1-2 (Tex.App.--Houston
[14th Dist.] April 14, 1994, no writ.) (not designated for publication) (guest
bitten in owner's home), or in a closed store without invitation and contrary
to instructions to wait in the car.  Jones v. Gill, No. 02-03-0298-CV,
2005 Tex. App. LEXIS 1726, at *2-3 (Tex.App.--Fort Worth March 3, 2005, no
pet.).  

            In
Searcy, the court discussed the injured
person's status while on the owner's property and determined the injured person
was a licensee; Searcy, 607 S.W.2d at
941-42, while, in Jones, the court
noted the person was in the store while it was closed and uninvited.  Jones, 2005 Tex. App. LEXIS 1726, at *17.  Because the persons bitten in Searcy and Jones were licensees, the defendant had no common law duty to
either warn the licensee or make the conditions safe and the plaintiff's
standard of proof was much higher---willful, wanton, or gross negligent
conduct; Searcy, 607 S.W.2d at 941, than
simple negligence.  Marshall, 511 S.W.2d at 259.       

            Here,
the dog in question was not being subjected to treatment normally accorded a
domestic dog or family pet in his owner's home or on his property.  On the contrary, the dog was an aggressive, guard
dog whose purpose was to protect TCAG's commercial property from vandalism and
theft.  The dog was chained for hours a
day, exposed to the elements, seeking shelter under vehicles, injured and
taking care of her young.  Animals
subjected to this type of treatment may well become frightened, overly protective
and dangerous.  As the dog's owner or keeper,
TCAG is charged with knowledge of these facts. 
See Restatement (Second) of
Torts § 518 cmt. (h) (1977).  Further, unlike
the cases cited by TCAG, VanHouten was an invitee to whom TCAG owed a duty to
warn and to keep the premises in a reasonably, safe condition.  Accordingly, TCAG's third issue is overruled.

Conclusion

            The trial
court’s judgment is affirmed.    

 

                                                                                                Patrick
A. Pirtle                                                                                                                                       Justice     

 

 

            

            

            

            











[1]Her vehicle
was on the lot for the purpose of being repaired.  VanHouten was responsible for any repair
costs.





[2]The "make ready" area of
the car lot was where TCAG serviced and cleaned used cars in anticipation of
offering them for sale. 





[3]TCAG argues no exception to the general rule that a denial of summary
judgment is interlocutory and unappealable. 
See, e.g., Baker
Hughes, Inc. v. Keco R. & D., Inc., 12 S.W.3d 1, 5 (Tex. 1999); Novak v. Stevens, 596 S.W.2d 848, 849
(Tex. 1980).  





[4]The jury charge defined an
"invitee" as follows:

[A] person who is on the premises at the express or implied
invitation of the possessor of the premises and who has entered thereon either
as a member of the public for a purpose for which the premises are held open to
the public or for a purpose connected with the business of the possessor that
does or may result in their mutual economic benefit.  





[5]TCAG does not dispute the ownership
of the dog or that it was a "keeper" of that dog.  With TCAG's permission, the actual owner of
the dog, Jose Salguero, a mechanic at TCAG, kept the dog on the lot as a guard
dog.  Jose chained the dog up in the
morning when he arrived and let the dog loose at night when he left work.





[6]A
veterinarian recommended surgery and placing pins in the dog's hip, however,
the treatment was not performed. 





[7]Foreseeability is satisfied by showing
the actor as a person of ordinary intelligence should have anticipated the
danger to others by his negligent act.  Searcy, 607 S.W.2d at
942.  It is not required that the
actor anticipate just how the injury will grow out of the particular situation.
 Id.
(citing Missouri Pacific Railroad Co. v.
American Statesman, 552 S.W.2d 99, 103 (Tex. 1977)). 





[8]Suits for damages caused by known
vicious animals are governed by principles of strict liability, predicated upon
a showing of the vicious or aggressive tendencies of the animal and the owner's
knowledge of that propensity.  Marshall, 511 S.W.2d
at 258; Dunnings, 881 S.W.2d
at 562.