Maggie DAWKINS et al., Appellants,

v.

A. P. VAN WINKLE, Appellee.

No. 4192.

Court of Civil Appeals of Texas.

Waco.

Jan. 23, 1964.

Baker, Jordan, Shaw & Foreman, Dallas, J. D. Dashiell, Buffalo, for appellants.

Naman, Howell, Smith & Chase, Geo. Chase, Waco, for appellee.

TIREY, Justice.

This is a negligence case. Appellant, the widow of Wesley Dawkins, brought the suit for herself and as next friend for her three minor children to recover damages for the loss of her husband while in the employ of appellee on appellee's ranch in Leon County, and while her husband was in the discharge of his duties in the course of his employment. At the close of plaintiffs' evidence defendant presented his motion for directed verdict, which motion was overruled. Thereafter the defendant refused to tender any testimony and rested and renewed his motion for directed verdict, which was overruled, and thereafter the court announced to the jury that the plaintiffs had failed to raise any issues of fact to be submitted to the jury and the court, on his own motion, withdrew the case from the jury and entered a judgment that plaintiffs take nothing by their suit, and that defendant go hence and recover his costs. We affirm the judgment of the trial court. Plaintiffs seasonably filed their amended motion for new trial and, it being overruled, perfected their appeal to this court.

The judgment is assailed on what plaintiffs designate as three points. They are grounded on assignments numbers 1, 2 and 4 in their amended motion for new trial and are to the effect that the court erred because there was evidence of probative force tendering the issues of negligence and proximate cause of defendant and his agents

that resulted in the death of Wesley Dawkins. We overrule each of these points for reasons hereinafter briefly stated.

A statement is necessary. Plaintiffs went to trial on their original petition and their trial amendment. Pertinent to this discussion plaintiffs, in their original petition, alleged that defendant was operating a ranch and that he had in his possession a large ferocious bull that the manager knew to be dangerous and illtempered; that the foreman directed Dawkins to move said bull from one location on the ranch to another; that the foreman did not provide proper equipment or help to move the bull and that such failure was negligence, and that as a result of such negligence while Dawkins was moving the bull from one part of the pasture to another he was attacked by the bull, gored, trampled and mauled, which severely injured Dawkins, and from which injuries he later died; that the negligence of defendant and his agents acting in the course of their employment proximately caused the injuries to Dawkins, resulting in his death. Plaintiffs, in their trial amendment, alleged generally that on the date in question defendant foreman directed Dawkins to move the bull from one location on the ranch to another, and that such foreman did not provide proper help or equipment to move the bull, and then specifically alleged eight different acts of negligence. They are substantially to the effect that: (1 and 2) Not having a bull clamp in the nose of the bull; (3 and 4) Failing to send another employee to assist Dawkins in moving the bull; (5, 6, 7 and 8) In failing to have the bull properly retained at the time and place in question by the use of a rope halter manned on the left and right side of the bull, knowing the vicious propensities of said bull. Plaintiffs alleged that these acts were negligence and the proximate cause of the injuries resulting in the death of the employee Dawkins. It is our view that the pertinent and controlling evidence in this cause is without dispute. Mr. Magourik, foreman of the ranch, testified to the effect that on August 16, 1961, he asked Wesley Dawkins to go to the pasture and bring the bull to the barn; that he was at the barn at that time, and that Wesley and another employee, Harold Webb, went into the pasture and brought the bull to the barn without any incident whatsoever; that he saw Wesley bring the bull into the barn, and that he was leading the bull with a rope halter; that this bull had been on the ranch a little more than three years, and that the bull was not ferocious. When Wesley got the bull into the barn he tied him to a post. The bull was brought to the barn for the purpose of breeding him to a cow that was in the barn and to complete the process that they used with reference to artificial insemination; that after they got the bull into the barn for the procedures with reference to artificial insemination, Wesley untied the bull and brought him to the cow (some 20 steps away from the post) and the first process was completed without incident and Wesley lead the bull back to the post and tied him again. After that a test was made of the semen caught and it was not satisfactory and they decided to make another catch of the semen and Wesley untied the bull and started to lead the bull back to the cow when he was gored by the bull. There is an absence of testimony as to what Wesley did except to untie the bull and start to lead him back to the cow and no testimony is given as to just what took place at the time or immediately before Wesley was gored by the bull. It is true that the foreman stated that the bull gored Wesley up against the fence, and he further testified that four other employees were around at the time besides himself, but there is an absence of testimony as to what caused the bull to gore Wesley, or any explanation as to what happened except that the bull gored Wesley while he was leading him to the cow for the second procedure, and that Wesley was thrown against the fence. Neither the plaintiffs nor defendant made further inquiry as to how or why the accident happened. The foreman testified to the effect that when Dawkins was injured the artificial insemination process was being conducted

in the same manner in which it had been done for many years, and that the exact procedure had been carried out only a few minutes before the accident, at which time Dawkins had brought the bull up to the cow alone as he started to do again, just before he was injured. He further testified that Dawkins had never asked for any additional help or equipment, and that Dawkins had never complained that the bull was dangerous. The evidence is further without dispute that there had never been any incident or activity on the part of the bull which would lead one to believe that he was not a completely docile animal, except at the time when Roy Webb stuck him with a pitchfork. The manager, to some extent, detailed the manner in which the artificial insemination process was completed and stated that four men were used in doing so, and that was all that was necessary. In Western Union Telegraph Co. v. Coker, 146 Tex. 190, 204 S.W.2d 977, points 2, 3 and 4, we find the following pronouncement:

> "The law imposes upon the employer the duty to exercise reasonable care in providing for an employee adequate help in the performance of work required of him.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> " 'So far as the movements of servants may depend upon their own volition, and are not in any way affected by the control of a superior, it is clear that there can be no recovery on the theory that the number of servants was temporarily inadequate at the time and place where the injury was received, unless it is shown that such inadequacy was known, actually or constructively, to the master or his representative' ".
> \*　　\*　　\*
>
> "The employer is not liable when he has provided help and injury results from the act of the employee in voluntarily proceeding to do the work without assistance. The same is true when sufficient help is nearby and available and the employee does the work without seeking or asking for assistance."

It is true that Roy Webb testified about the bull having gored him some 15 months before Wesley Dawkins was hurt. At the time Roy Webb was hurt he was feeding the bull at one end of the feed trough and he decided it was necessary to move the bull to another place on the feed trough in order to make it easier to bring horses through the gates leading to the barn; that when he attempted to move the bull to the other end of the feed trough he had a pitchfork and stuck the bull with the pitchfork and that caused the bull to attack him. That was the only incident that occurred prior to the time that Wesley Dawkins was injured, and Roy further testified to the effect that the bull was real gentle and that they had never used a halter on the bull until after he had hooked him; that they would go to the pasture after the bull and it wasn't necessary to put a halter on him because he was so gentle; that they would drive him along by petting and coaxing him; that they always sent two men to bring the bull from the pasture to the barn. So, the evidence is without dispute that there had never been any incident on the part of the bull which would lead one to believe that he was anything but a completely docile animal, except the time Roy Webb jabbed him with a pitchfork as above detailed. It is also without dispute that there is no evidence of necessity for further help in bringing the bull from the pasture to the barn, or that the ranch foreman failed in any way to use reasonable care in the handling of the bull in completing this process of artificial insemination, which process had been conducted in the same manner at the ranch for some years.

■ Our view of this record is that there is no evidence of probative force that the bull was vicious or had vicious propensities which were known to appellee; all the evidence is to the effect that the bull was completely docile both before and after the Roy Webb incident. Wesley Dawkins had given the bull the pet name of Nap. As we understand the rule of law here applicable it only imposed upon the defendant and his

employees the duty to use that degree of care that an ordinary prudent person would have used in employing the means in bringing the bull from the pasture to the barn, and that the same rule would apply in completing the process of artificial insemination. The burden was on plaintiffs to show that such care was not used and we think that under this record they failed to carry such burden. See Carson v. Knight (Com.App.), 294 S.W. 539 points (1, 2) page 540. See also Texas Digest, Vol. 2A, Animals, ⬥ No. 66, Personal Injuries. See also D-Bar Ranch v. Maxwell, Tex.Civ.App., 170 S.W. 2d 303 (w. o. m.).

■■ Going back to the pleadings, they are to the effect that the defendant was negligent in bringing the bull from one part of the ranch to another location on the ranch, and there is an absence of testimony to show that anything happened while the bull was being led by a rope halter from the pasture to the barn. Two men were engaged in this task. Neither the original petition nor the trial amendment alleged that defendant was guilty of any negligence in the way he handled the bull after the bull was in the barn and while they were carrying out the process of artificial insemination. There is a total absence of testimony that the defendant failed to use sufficient help or sufficient equipment in the completion of this particular operation. So, we have a record before us where there is no proper pleading of a breach of duty upon which to submit the cause to the jury, nor is there any testimony tendering an issue as to the failure of the defendant to use ordinary care for the safety of his employees in accomplishing the task at hand. We do not find any act of negligence on the part of the employees or their agents, which was tendered by the evidence. In Texas and Pacific Ry. Co. v. Bigham, 90 Tex. 223, 38 S.W. 162, our Supreme Court made this pronouncement:

"It is usually laid down, in cases of negligence, that, in order to constitute the proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission. * * * the rule is that a party should not be held responsible for the consequences of an act which ought not

reasonably to have been foreseen. In other words, it ought not to be deemed negligent to do or to fail to do an act when it was not anticipated, and should not have been anticipated, that it would result in injury to any one."

Our Supreme Court has not seen fit to change the foregoing rule. Under the record here made, it is our view that Wesley Dawkins assumed the risk incident to his employment and that it was the duty of the trial court to grant the defendant's motion for instructed verdict, and having failed to do so it was the further duty of the court to withdraw the cause from the jury, and enter the decree it did. See also Union Stockyards v. Peeler (Com.App.) 37 S.W.2d 126, opinion by Critz. Each of appellants' points have been fully considered, and each is overruled. Affirmed.