**Paul MARSHALL, Petitioner,**

v.

**John C. RANNE, Respondent.**

**No. B–4024.**

Supreme Court of Texas.

May 1, 1974.

On Rehearing June 19, 1974.

Rehearing Denied July 17, 1974.

Brown, Brown & Bowen, James F. Bowen, Garland, Hernandez, Cazorla & Alexander. Dallas, for petitioner.

Kenley, Boyland, Hawthorn, Starr & Coghlan, Herbert Boyland, Longview, for respondent.

POPE, Justice.

Paul Marshall instituted this suit against John C. Ranne seeking damages for injuries he sustained when Ranne's vicious hog attacked him and severely injured his hand. The jury made findings that plaintiff Marshall was contributorily negligent and also that he voluntarily assumed the risk of the hog. The trial court rendered judgment for the defendant on the verdict. The court of civil appeals ruled that the findings of the jury concerning the plaintiff's assumption of the risk supported the judgment and affirmed. 493 S.W.2d 533. We reverse the judgments of the courts below and render judgment for the plaintiff Marshall.

The opinion of the court of civil appeals correctly states these operative facts:

The only witness to the occurrence was plaintiff. He and defendant both lived in Dallas, but they owned neighboring farms in Van Zandt County. Plaintiff's principal occupation was raising hogs. At the time of the injury he had about two hundred on his farm. The hog in question was a boar which had escaped from defendant's farm and had been seen on plaintiff's land during several weeks before the day of the injury. According to plaintiff, defendant's boar had charged him ten to twelve times before this occurrence, had held him prisoner in his outhouse several times, and had attacked his wife on four or five occasions. On the day of the injury plaintiff had hauled in several barrels of old bread in his pickup and had put it out for his hogs at the barn. At that time he saw defendant's boar about a hundred yards behind the barn, but it came no nearer. After feeding his hogs, he went into the house and changed clothes to get ready to go back to Dallas. On emerging from the house, he looked for the boar because, as he testified, he always

had to look before he made a move, but he did not see it. He started toward his pickup, and when he was about thirty feet from it, near the outhouse, he heard a noise behind him, turned around and saw the boar charging toward him. He put out his hand defensively, but the boar grabbed it and bit it severely.

Plaintiff testified that the first time the hog had jeopardized his safety was about a week or ten days before he was hurt. He did not shoot the hog because he did not consider that the neighborly thing to do, although he was an expert with a gun and had two available. He made no complaint about the hog to defendant until the day of the injury, when he wrote a note and put it on defendant's gate. The note read:

"John, your boar has gone bad. He is trying to chase me off the farm. He stalks us just like a cat stalks a mouse every time he catches us out of the house. We are going to have to get him out before he hurts someone."

This note did not come to defendant's attention until he came in late that afternoon, and the evidence does not reveal whether he saw it before plaintiff was injured. Plaintiff testified that he and defendant had previously discussed the hog's viciousness on several occasions.

The answers to the special issues were: (1) defendant's boar hog bit the plaintiff's right hand on January 21, 1970, (2) immediately prior to that date, the boar hog had vicious propensities and was likely to cause injury to persons, (3) refused to find that at any time before plaintiff's injury, the defendant actually knew that the defendant's boar hog was vicious and was likely to cause injury to persons, (4) the defendant prior to plaintiff's injury in the exercise of ordinary care should have known that the boar hog was vicious and likely to cause injury to persons, (5) defendant permitted his boar hog to run at large after he knew or should have known that the hog was vicious and likely to cause injury

to persons, (6) plaintiff, Paul Marshall, had knowledge of the vicious propensities of the defendant's boar hog and that it was likely to cause injury to persons at and prior to the time the hog bit him, (7) plaintiff, Paul Marshall, with knowledge of the nature of defendant's boar hog voluntarily exposed himself to the risk of attack by the animal, (8) plaintiff's failure to shoot the defendant's boar hog prior to the time the hog bit plaintiff was negligence, (9) which failure was a proximate cause of plaintiff's injuries, (10) plaintiff failed to maintain a fence about his premises sufficiently close to prevent hogs passing through, (11) which was negligence, and (12) a proximate cause of plaintiff's injuries, (13) plaintiff was damaged in the amount of $4,146.00.

The questions presented by this cause are (1) the true nature of an action for damages caused by a vicious animal, (2) whether contributory negligence is a defense to this action, and (3) whether plaintiff Marshall was, as a matter of law, deprived of a voluntary and free choice in confronting the risk.

### Nature of Vicious Animal Cases

A correct classification of this case is important, since that decision also controls the nature of the acceptable defenses to the action. In Texas, actions for damages caused by vicious domestic animals have sometimes been cast as common law negligence cases, at other times as strict liability cases, and sometimes as either. Comment, Personal Injuries by Animals in Texas, 4 Baylor L.Rev. 183 (1952). Among the cases which have been pleaded and tried as negligence cases are: H. E. Butt Grocery Company v. Perez, 408 S.W. 2d 576 (Tex.Civ.App.1966, no writ); Zuniga v. Storey, 239 S.W.2d 125 (Tex.Civ. App.1951, writ ref'd n. r. e.); Dakan v. Humphreys, 190 S.W.2d 371 (Tex.Civ. App.1945, no writ); Herring v. Schingler, 101 S.W.2d 394 (Tex.Civ.App.1937, writ dism'd); Villareal v. Alexander, 13 S.W.2d 712 (Tex.Civ.App.1929, no writ); Pettus v.

Weyel, 225 S.W. 191 (Tex.Civ.App.1920, writ ref'd); Trinity & S. Ry. Co. v. O'Brien, 18 Tex.Civ.App. 690, 46 S.W. 389 (1898, no writ); Badali v. Smith, 37 S.W. 642 (Tex.Civ.App. 1896, no writ).

Strict liability has been applied in about an equal number of vicious animal cases. In Moore v. McKay, 55 S.W.2d 865 (Tex. Civ.App.1933, no writ), the court noticed that Badali v. Smith, 37 S.W. 642 (Tex. Civ.App.1896, no writ), in applying negligence rules conflicted with Triolo v. Foster, 57 S.W. 698 (Tex.Civ.App.1900, no writ), which charged an owner with liability for damages for injuries in keeping an animal which the owner knew or had reason to know was vicious. The court ruled that the defendant's negligence was not the proper basis for liability. Comment, Personal Injuries by Animals in Texas, 4 Baylor L.Rev. 183 (1952). These cases have approved the strict liability theory: Wells v. Burns, 480 S.W.2d 31 (Tex.Civ.App. 1972, no writ); Arrington Funeral Home v. Taylor, 474 S.W.2d 299 (Tex.Civ.App. 1971, writ ref'd n. r. e.); Lewis v. Great Southwest Corporation, 473 S.W.2d 228 (Tex.Civ.App.1971, writ ref'd n. r. e.); Hill v. Palms, 237 S.W.2d 455 (Tex.Civ. App.1951, no writ); Bly v. Swafford, 199 S.W.2d 1015 (Tex.Civ.App.1947, no writ); Gamer v. Winchester, 110 S.W.2d 1190 (Tex.Civ.App.1937, writ dism'd); Moore v. McKay, *supra*; Copley v. Wills, 152 S.W. 830 (Tex.Civ.App.1913, no writ); Barklow v. Avery, 40 Tex.Civ.App. 355, 89 S.W. 417 (1905, no writ); Triolo v. Foster, *supra; Note*, 16 Tex.L.Rev. 395 (1938).

■ We approve the rule expressed in Moore v. McKay, *supra,* that suits for damages caused by vicious animals should be governed by principles of strict liability, and disapprove the cases which hold the contrary. W. Prosser, Law of Torts § 76 (4th ed. 1971); 2 F. Harper & F. James, the Law of Torts § 14.11 (1956). The correct rule is expressed in Restatement of Torts §§ 507, 509 (1938):·

## § 507. LIABILITY OF POSSESSOR OF WILD ANIMAL.

Except as stated in §§ 508 and 517, a possessor of a wild animal is subject to liability to others, except trespassers on his land, for such harm done by the animal to their persons, lands or chattels as results from a dangerous propensity which is characteristic of wild animals of its class or of which the possessor has reason to know, although he has exercised the utmost care to confine the animal or otherwise prevent it from doing harm.

## § 509. HARM DONE BY ABNORMALLY DANGEROUS DOMESTIC ANIMALS.

Except as stated in § 517, a possessor of a domestic animal which he has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm caused thereby to others, except trespassers on his land, although he has exercised the utmost care to prevent it from doing the harm.

The jury in this case refused to find that the defendant actually knew that the hog was vicious and was likely to cause injury to persons, but it did find in answer to special issue four that the defendant prior to plaintiff's injury should have known that fact. Defendant Ranne does not challenge the finding to issue four.

The Restatement, quoted above, uses the phrase "has reason to know" and the fourth special issue submitted in this case used the phrase "should have known." There is no essential distinction between the two terms as explained in Restatement (Second) of Torts § 12 (1965):

§ 12. Reason to Know; Should Know

(1) The words "reason to know" are used throughout the Restatement of this Subject to denote the fact that the actor has information from which a person of reasonable intelligence or of

the superior intelligence of the actor would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists.

(2) The words "should know" are used throughout the Restatement of this Subject to denote the fact that a person of reasonable prudence and intelligence or of the superior intelligence of the actor would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists.

### Contributory Negligence is No Defense To Strict Liability

█ The trial court over plaintiff's objection, submitted contributory negligence issues and the jury found that plaintiff Marshall was negligent in several particulars. We hold that contributory negligence is not a defense to this action. The court in Copley v. Wills, 152 S.W. 830 (Tex.Civ.App.1913, no writ), confronted this question and rejected contributory negligence as an applicable defense to an action for strict liability for keeping a vicious animal which one knew or had reason to know was vicious. This is also the view expressed in Restatement (Second) of Torts § 515, Comment b (Tent.Draft No. 10, 1964):

*b.* Since the strict liability of the possessor of an animal is not founded on his negligence, the ordinary contributory negligence of the plaintiff is not a defense to such an action. The reason is the

policy of the law which places the full responsibility for preventing the harm upon the defendant. Thus where the plaintiff merely fails to exercise reasonable care to discover the presence of the animal, or to take precautions against the harm which may result from it, his recovery on the basis of strict liability is not barred.

We conclude that the findings of plaintiff's contributory negligence as contained in the answers to special issues eight through twelve have no place in this case and did not bar the plaintiff from recovery. 2 F. Harper & F. James, The Law of Torts § 14.12, at 843 (1956). We do not hold that negligence and contributory negligence can never be a correct theory in a case which concerns animals. All animals are not vicious and a possessor of a nonvicious animal may be subject to liability for his negligent handling of such an animal. This was the situation in Dawkins v. Van Winkle, 375 S.W.2d 341 (Tex.Civ. App.), writ dism'd w. o. j., 377 S.W.2d 830 (Tex.1964). Accord, Restatement of Torts § 518 (1938); 2 F. Harper & F. James, The Law of Torts § 14.11, at 833–834 (1956); 3A C.J.S. Animals § 178 (1973).

### Did Marshall Voluntarily Assume the Risk?

█ Plaintiff Marshall does not contend that voluntary assumption of risk is no defense to an action which asserts the defendant's strict liability. He alludes to the truth that it has been abolished as a defense in a number of states in actions grounded upon negligence.[1] Marshall's ar-

---

1. Leavitt v. Gillaspie, 443 P.2d 61 (Alaska 1968); Rosenau v. City of Estherville, 199 N.W.2d 125 (Iowa, 1972); Parker v. Redden, 421 S.W.2d 586 (Ky.1967); Felgner v. Anderson, 375 Mich. 23, 133 N.W.2d 136 (1965); McWilliams v. Parham, 269 N.C. 162, 152 S.E.2d 117 (1967); Bolduc v. Crain, 104 N.H. 163, 181 A.2d 641 (1962); McGrath v. American Cyanamid Co., 41 N.J. 272, 196 A.2d 238 (1963); Williamson v. Smith, 83 N.M. 336, 491 P.2d 1147 (1971); Ritter v. Beals, 225 Or. 504, 358 P.2d 1080 (1961); Siragusa v. Swedish Hosp., 60 Wash.2d 310, 373 P.2d 767 (1962); Gilson v. Drees Bros., 19 Wis.2d 252, 120 N.W.2d 63 (1963); McConville v. State Farm Mut. Automobile Ins. Co., 15 Wis.2d 374, 113 N.W.2d 14 (1962); *Note,* 60 Mich.L.Rev. 819 (1962); Colson v. Rule, 15 Wis.2d 387, 113 N.W.2d 21 (1962); DuBose v. Matson Nav. Co., 403 F.2d 875 (9th Cir. 1968); Accord: Fawcett v. Irby, 92 Idaho 48, 436 P.2d 714 (1968).

gument is that he did not, as a matter of law voluntarily expose himself to the risk of the attack by the hog. The jury found that plaintiff Marshall had knowledge of the vicious propensities of the hog and that it was likely to cause injury to persons, and also found that plaintiff, with knowledge of the nature of defendant's boar hog, voluntarily exposed himself to the risk of attack by the animal. We hold that there was no proof that plaintiff had a free and voluntary choice, because he did not have a free choice of alternatives. He had, instead, only a choice of evils, both of which were wrongfully imposed upon him by the defendant. He could remain a prisoner inside his own house or he could take the risk of reaching his car before defendant's hog attacked him. Plaintiff could have remained inside his house, but in doing so, he would have surrendered his legal right to proceed over his own property to his car so he could return to his home in Dallas. The latter alternative was forced upon him against his will and was a choice he was not legally required to accept. W. Prosser, Law of Torts § 68, at 450–453 (4th ed. 1971). We approve and follow the rule expressed in Restatement (Second) of Torts·§ 496E (1965):

(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

(a) avert harm to himself or another, or

(b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

The dilemma which defendant forced upon plaintiff was that of facing the danger or surrendering his rights with respect to his own real property, and that was not, as a matter of law the voluntary choice to which the law entitled him. Kanelos v. Kettler, 132 U.S.App.D.C. 133, 406 F.2d 951 (1968); American Smelting & Refin-

ing Co. v. Riverside Dairy & Stock Farm, 236 F. 510 (8th Cir. 1916); Judson v. Giant Powder Co., 107 Cal. 549, 40 P. 1020 (1895); Associated Metals & Minerals Corp. v. Dixon Chemical & Research Co., 82 N.J.Super. 281, 197 A.2d 569 (1962); Schiro v. Oriental Realty Co., 272 Wis. 537, 76 N.W.2d 355, 73 A.L.R.2d 1368 (1956); 2 F. Harper & F. James, The Law of Torts § 21.1, at 1166 (1956); 65A C.J.S. Negligence § 174(2) (1966).

We held in Harvey v. Seale, 362 S.W.2d 310, 313 (Tex.1962), that a choice afforded a nine-year-old child to cease playing on a porch that her parents held by lease or to risk stepping in a hole was not a voluntary one. We wrote in that case:

By virtue of her father's lease, she was entitled to be on the front porch of her home without regard to respondent's consent. Respondent was not privileged, therefore, to adopt a "take it or leave it" attitude, and his duty to petitioner was not fully discharged when she learned of the danger. The negligent failure to repair the hole placed her in a position where she was compelled to choose between foregoing her legal right to play on the porch and encountering the risk involved in playing there. If her choice was unreasonable under the circumstances, she was guilty of contributory negligence, but respondent will not be heard to say that she voluntarily exposed herself to the danger, and that he owed her no duty with respect thereto, when she decided to play on the porch.

Nor do we regard Rabb v. Coleman, 469 S.W.2d 384 (Tex.1971), in conflict with our holding. In *Rabb*, we ruled that voluntary assumption of risk applies to one who owns the property upon which he is injured, but Coleman, the owner, faced a known danger which he fully appreciated when he was free to move only a short distance and escape the danger. The burden upon his freedom of movement was very slight.

Defendant Ranne argues also that the plaintiff Marshall had yet another alterna-

tive, that of shooting the hog. The proof showed that Marshall was an expert marksman and had a gun in his house with which he could have killed the hog. Plaintiff Marshall testified that he was reluctant to destroy his neighbor's animal because he did not know how Ranne would react. We do not regard the slaughter of the animal as a reasonable alternative, because plaintiff would have subjected himself arguably to charges under the provision of two criminal statutes.[2]

We accordingly hold that contributory negligence is not a defense in a strict liability action. Voluntary assumption of risk, if established, would be a valid defense. In this case as a matter of law, the proof shows that plaintiff Marshall did not voluntarily encounter the vicious hog. We, therefore, reverse the judgments of the courts below and render judgment that plaintiff recover the sum of $4,146.00 the amount of damages found by the jury.

## ON REHEARING

Defendant, John C. Ranne, urges in his motion for rehearing that there was neither finding nor evidence that he permitted the hog to run at large after he should have known the animal was vicious. The jury found as a fact that he permitted his hog to run at large after he knew, or should have known that the hog was vicious and likely to cause injury to persons. Ranne himself testified concerning the nature of the animal, "I knew that he had been raised alone and wasn't, you know, a regular yard type animal." According to the plaintiff, Ranne visited him in the hospital and told him, "I knew the bugger was mean." A witness told of Ranne's visit

to the hospital after the animal attacked plaintiff. She testified that Ranne then told Marshall, "I knew he was vicious, why didn't you kill him?" We overrule defendant's motion for rehearing.

Plaintiff, Marshall, also filed a motion for rehearing and urges that the court of civil appeals erred in refusing to consider his point that the damages awarded in the trial court were manifestly unjust and grossly inadequate. The trial court's judgment was grounded upon a verdict which found no damages for past or future pain and mental anguish or for loss of past or future earnings. We grant plaintiff's motion for rehearing, set aside our former judgment, reverse the judgments of the courts below and remand the cause to the court of civil appeals for its consideration of the point touching the adequacy of the damages.

---

2. "Whoever shall wilfully maim, wound or disfigure any horse, ass, mule, cattle, sheep, goat, swine, dog or other domesticated animal, or whoever shall wilfully kill, maim, wound, poison, or disfigure any dog, domesticated bird or fowl of another with intent to injure the owner thereof, shall be fined not less than Ten Dollars ($10) nor more than Two Hundred Dollars ($200). In prosecutions under this Article the intent to injure

may be presumed from the perpetration of the act." Art. 1373, Texas Penal Code.

"Whoever knowingly kills any unmarked or unbranded animal of the cattle species, or any unmarked hog, sheep or goat, not his own, shall be fined not less than twenty-five nor more than one hundred dollars. It shall only be necessary to allege and prove that the animal killed was not the property of the accused, without stating or proving the true owner." Art. 1462, Texas Penal Code.