**Turhan DUNNINGS, Appellant,**

v.

**Melinda Jean CASTRO, Appellee.**

**No. 01–93–00091–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 4, 1994.

Bruce Fickman, Houston, for appellant.

Jeffery A. Addicks, Houston, for appellee.

Before O'CONNOR, DUGGAN and HUTSON–DUNN, JJ.

### OPINION ON MOTION FOR REHEARING

O'CONNOR, Justice.

We deny Melinda Jean Castro's motion for rehearing, but withdraw our original opinion and substitute this in its stead. This is an appeal from a summary judgment for the defendant. We reverse and remand.

### Fact Summary

Turhan Dunnings, a mailman, was injured as he was attempting to deliver mail to Me-linda Jean Castro's home and was frightened by her dog, Leo's Blue Cousin Elmo (Elmo, for short). Elmo, a five-year-old, 85–pound male Weimaraner, was tethered on an 18–foot plastic-coated wire in the front of Castro's house. As Dunnings walked up the driveway toward the house, Elmo, who was in the bushes, lunged at Dunnings and frightened him, causing him to jump out of the way. Dunnings, trying to escape Elmo's attack, took several steps backward, tripped and fell to the ground, hitting his head on the driveway. While he was on the ground, Dunnings kicked at Elmo in an attempt to keep the dog from biting him, and yelled for help. Castro came out of the house and took Elmo inside. The dog did not bite Dunnings.

Dunnings suffered two herniated cervical discs and other injuries as a result of the March 22, 1991, fall. He sued Castro for negligence and strict liability. Castro filed a motion for summary judgment, which the trial court granted.

For a defendant to be entitled to a summary judgment the defendant must disprove, as a matter of law, at least one essential element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). On review, we must consider the evidence in the light most favorable to the non-movant, and resolve all doubts and make inferences in his favor. *Id.* at 471; *Mobil Oil v. Texas Commerce Bank–Airline,* 813 S.W.2d 607, 608 (Tex.App.—Houston [1st Dist.] 1991, no writ). Once the movant has established a right to a summary judgment, the burden shifts to the non-movant. The non-movant then must respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979).

### Strict Liability

■ In point of error one, Dunnings argues the trial court erred in granting the motion for summary judgment because genuine fact issues precluded summary judgment on Castro's strict liability claim.

■ The strict liability standard involved in cases of dangerous domestic animals is expressed in *Marshall v. Ranne,* 511 S.W.2d 255, 258 (Tex.1974). In *Marshall,* the Texas Supreme Court held that suits for damages caused by vicious animals should be governed by principles of strict liability, predicated upon a showing of the vicious or aggressive tendencies of the animal and the owner's knowledge of that propensity. *Id.* at 258. The Supreme Court adopted § 509 of the RESTATEMENT (SECOND) OF TORTS which states:

> [A] possessor of a domestic animal that he has reason to know has dangerous propensities *abnormal to its class,* is subject to liability for harm done by the animal to another although he has exercised the utmost care to prevent it from doing harm.

(Emphasis added.)

Nothing in the summary judgment evidence suggests that Elmo has dangerous propensities that are abnormal when compared to other dogs. Castro stated in her deposition that she did not know of any vicious or aggressive tendencies of Elmo. She bought him as a pet, and he had never acted aggressively or attacked anyone.

■ In his response in opposition to Castro's motion for summary judgment, Dunnings points to Castro's deposition to show there is some evidence she knew Elmo was dangerous. In her deposition, Castro stated she lives alone, that her car was stolen from outside her house in 1989, when she gets home from work it is dark, she has no alarm system, she feels safer at night knowing her dog is inside her house, she believes her dog would protect her if she were attacked by an intruder, and she knows her dog might scare strangers because of his size. In this recitation of evidence, Dunnings does not allege the dog has dangerous propensities abnormal to its class.

Dunnings also offers the affidavit of an expert in dog behavior, Dr. Erick Klinghammer. Dr. Klinghammer stated that a reasonably prudent owner of a five-year-old Weimaraner would know that leaving the dog tied to a post on the owner's property would increase the likelihood that the dog would react in an aggressive manner if confronted by a stranger on the owner's property. Dunnings contends Klinghammer's statement and Castro's deposition provide evidence of the dog's vicious and potentially aggressive nature that precludes summary judgment and needs to be presented to a jury. Again, nothing in Dr. Klinghammer's statement suggests that the dog had dangerous propensities abnormal to its class.

Dunnings contends this Court has held that the affidavit of an expert witness can create a fact issue sufficient to preclude summary judgment. *Haight v. Savoy Apts.,* 814 S.W.2d 849, 854 (Tex.App.—Houston [1st Dist.] 1991, writ denied). *Haight* is a case in which the expert gave his opinion on what the security should have been at an apartment complex where a woman was sexually assaulted and murdered. *Id.* at 853. In his affidavit, the expert in *Haight* addressed an issue that raised a fact question on liability, whether the particular security at the complex was adequate. In this case, even if we take what the expert says as true—that a reasonably prudent owner of a five-year-old Weimaraner should know that, if left outside, the dog might behave aggressively—it does not raise a fact issue on whether this owner knew or should have known that her dog had dangerous propensities abnormal to its class. Viewing the evidence favorable to the non-movant, we do not find any issue of material fact that precludes granting summary judgment for Castro on the strict liability claim.

We overrule point of error one.

### Negligence

■ In point of error two, Dunnings argues the trial court erred in granting the motion for summary judgment because genuine fact issues precluded summary judgment on Castro's negligence claim.

■ Negligence is defined as conduct that falls below the standard established by law for the protection of others against unreasonable risk of harm. RESTATEMENT (SECOND) OF TORTS § 282 (1965). Negligent conduct is a proximate cause of harm to another if, in a natural and continuous sequence, the negligent conduct produces an event that causes the harm, and without the

negligent conduct such event would not have occurred. *Lear Siegler, Inc.,* 819 S.W.2d at 471.

■ Dunnings contends it is not necessary to find an animal vicious to sustain a negligence action, but only that its owner was negligent in handling the animal. Dunnings bases his argument on *Marshall,* where the court stated that the possessor of a non-vicious animal may be liable for his negligent handling of an animal. We agree. In *Marshall,* the court said:

> We do not hold that negligence ... can never be a correct theory in a case which concerns animals. All animals are not vicious and a possessor of a non-vicious animal may be subject to liability for his negligent handling of such an animal. This was the situation in *Dawkins v. Van Winkle,* 375 S.W.2d 341 (Tex.Civ.App.— Waco 1964), *writ dism'd w.o.j.,* 377 S.W.2d 830 (Tex.1964). *Accord,* RESTATEMENT OF TORTS § 518 (1938); 2 F. Harper & F. James, The Law of Torts § 14.11, at 833–834 (1956); 3A C.J.S. Animals § 178 (1973).

511 S.W.2d at 259. By this statement, the Supreme Court recognized that even though a finding of viciousness is necessary in a strict liability claim, it is not necessary in the negligence claim. If a finding of viciousness was necessary for both strict liability and negligence, there would be no reason to make a distinction between the two theories of recovery.

In *Dawkins,* cited by the Supreme Court in *Marshall* and by the plaintiff in this case, the plaintiff sought recovery on a negligence theory for the death of her husband, who was killed in a ranch accident involving a bull. *Dawkins,* 375 S.W.2d at 342. The court of appeals held that the plaintiff's evidence did not establish that the bull was vicious or had vicious propensities known to the defendant. Dunnings contends that even though the court found the bull was not vicious and did not display any tendency to be vicious, it did not preclude the court from considering whether there was any negligence on the part of the employer. We agree with Dunnings' analysis.

■ The RESTATEMENT (SECOND) OF TORTS § 518 addresses the liability for harm caused by domestic animals that are not abnormally dangerous. The comment to that section states:

> Animals dangerous under particular circumstances. One who keeps a domestic animal that possesses only those dangerous propensities that are normal to its class is required to know its normal habits and tendencies. He is therefore required to realize that even ordinary gentle animals are likely to be dangerous under particular circumstances and to exercise reasonable care to prevent foreseeable harm.... So, too, the keeper of an ordinary gentle bitch or cat is required to know that while caring for her puppies or kittens she is likely to attack other animals and human beings.

Restatement (Second) of Torts § 518(h).

In 3 HARPER & JAMES, THE LAW OF TORTS § 14.11, at 268–69 (1986), it states:

> If notice of viciousness is present the owner of animals is liable irrespective of negligence or care on his part in keeping the animal, although the mere keeping the animal is not regarded as culpable. If there is not notice of the ferocious nature of the animal, the owner may, of course, still be liable for negligent keeping, but the basis of liability in the two cases must be sharply distinguished.

Finally, in 3A C.J.S. *Animals* § 178 (1973), it states:

> The gist of an action brought to recover for injuries caused by a domestic animal, resulting from other than known vicious propensities, is usually negligence of the owner or keeper in the keeping or handling of the animal.

In *Owens v. Coury,* 614 S.W.2d 926 (Tex. Civ.App.—Amarillo, 1981, no writ), the plaintiffs sought recovery under strict liability and negligence theories after the defendant's dog attacked the plaintiffs and their smaller dog. The jury findings supported recovery under both theories. While the defendant challenged the jury findings supporting the strict liability theory, he did not challenge the jury findings on the negligence theory. The ap-

pellate court recognized the distinction between the two theories:

> We acknowledge that in *Marshall v. Ranne*, 511 S.W.2d 255, 258 (Tex.1974), the Court stated "that suits for damages caused by vicious animals should be governed by principles of strict liability," and further determined, *inter alia*, that contributory negligence is not a defense to the strict liability action. However, we do not construe *Marshall* to preclude negligence actions as independent grounds for recovery. *Id.* at 259. Accordingly, the jury's unchallenged answers to the negligence and proximate cause issues render immaterial the jury's answers to the strict liability issues. Thus, any error regarding the submission of, or the jury's answers to, special issues one and two is not reversible error.

*Owens*, 614 S.W.2d at 929.

In *Belger v. Sweeney*, 836 S.W.2d 752, 754 (Tex.App.—Houston [1st Dist.] 1992, writ denied), a lawsuit filed against the owner of a dog for personal injury, this Court stated the plaintiff must show that the dog was vicious and the owner had actual or constructive knowledge of that viciousness. The opinion did not address any claim of negligence, only strict liability. Accordingly, *Belger* does not preclude this Court from granting relief to Dunnings in the present case.

We hold, in accord with *Marshall*, the Restatement of Torts, Harper & James, Corpus Juris Secundum, and other authorities, that an owner of a dog may be liable for injuries caused by the dog even if the animal is not vicious, if the plaintiff can prove that the owner's negligent handling of the animal caused the animal to injure the plaintiff.

We acknowledge that in *Searcy v. Brown*, 607 S.W.2d 937, 941 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ), we said:

> The owner of a domestic animal is not liable for injuries caused by it in a place where it has a right to be unless the animal is of known vicious propensities or the owner should know of the vicious or unruly nature of the animal.

In *Searcy*, the defendant posted his property with notices that warned the public not to enter, and to "beware of dog." The plaintiff, who went to inquire about a for sale sign, did not see the warning signs and was attacked when he stepped onto the property. *Id.* at 939. The plaintiff in *Searcy* was a licensee, to whom the defendant owed the duty not to injure him willfully, wantonly, or through gross negligence. *Id.* at 941.

■ The duties owed by a landowner depend upon the role of the person injured on the premises. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex.1975); *Midkiff v. Hines*, 866 S.W.2d 328, 332 (Tex.App.—Houston [1st Dist.] 1993, n.w.h.). In this case, Dunnings, as a mailman, was an invitee to whom the defendant owed the duty to exercise ordinary care to keep the premises in a reasonably safe condition so as not to injure him. As a mailman, Dunnings was on the premises in response to an express or implied invitation for a mutually beneficial business purpose. *See Midkiff*, 866 S.W.2d at 332.

By the very nature of his job, Dunnings was required to enter Castro's premises to deliver mail every work day. Castro depended on Dunnings performing his job and delivering her mail. After this incident, when the post office stopped delivering her mail, she made a trip to the post office to make arrangements to have the delivery continued. Castro knew that Dunnings or some other employee of the post office would enter her front yard every work day to deliver mail. Castro had a duty to protect whoever delivered her mail from an unreasonable risk of harm. Dunnings contends a jury should decide if it was unreasonable for Castro to tether an 85–pound dog in the front of her house and leave it unattended. In her deposition, Castro admitted that when she heard Elmo barking, she ran outside because "Elmo was a big dog and might scare someone." That is exactly what happened.

We note that in *Gill v. Rosas*, 821 S.W.2d 689, 691 (Tex.App.—El Paso 1991, no writ), the court held that the mailman who was attacked by a dog that was allowed to run at large did not have a cause of action against the owner. The mailman pled that the owner was negligent in permitting his dog to run at large and attack him. The court held the

mailman did not have a cause of action because he was not able to prove the dog was vicious and the owner knew about it. We note that in *Gill* no expert on dog behavior testified to raise a fact issue on negligent handling. In our case, an affidavit from an expert on dog behavior created a fact issue on negligent handling—that Castro should have known her dog would behave aggressively when left tied to the front of her house. In this case, summary judgment is improper.

Viewing the evidence in the light most favorable to the non-movant, we find an issue of material fact to preclude the granting of summary judgment on the negligence claim.

We sustain point of error two and remand the cause to the trial court.