**Affirmed and Memorandum Opinion filed October 24, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00520-CV

### PABLO CASTREJON, Appellant

### V.

### ANDREW HORTON AND CASSY HORTON, Appellees

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 15-CV-0104**

## M E M O R A N D U M   O P I N I O N

Appellant Pablo Castrejon sued appellees Andrew Horton and Cassy Horton to recover damages for personal injuries he sustained as a result of a dog bite. The trial court granted summary judgment in the appellees' favor, dismissing all of appellant's claims. In one issue (with several subparts), appellant argues that the trial court erred in granting the appellees summary judgment. We affirm.

# I.    Background

On March 29, 2013, appellant went with his girlfriend, Heather, to the appellees' house in League City, Texas, to meet Heather's father, who was staying with the appellees. Appellant did not know the appellees. The appellees did not know that either Heather or appellant would be stopping by their residence.

Appellant and Heather stood on the appellees' front porch and Heather knocked on the door several times. Neither appellees nor her father were at the house. When no one answered the door, Heather opened the unlocked front door and walked inside the house. Upon opening the door, the appellees' dog, Rusty, a twenty-two month old Akita, which was inside the house, came to the door. Appellant, who had remained on the front porch, attempted to close the door upon seeing Rusty inside the house. Rusty, however, went through the threshold of the open front door onto the front porch and bit appellant. Despite being bitten, appellant was able to push Rusty back inside the appellees' home and shut the door. Appellant was taken to the hospital for his injuries.

In his original petition, filed in February 2015, appellant brought two claims against the appellees, one for negligent handling of an animal and the other for strict liability of a dangerous domesticated animal. In April 2015, appellant filed a second amended petition, adding two new theories of negligence — negligence *per se* for an alleged violation of the statutory duty outlined in section 822.042 of the Texas Health and Safety Code[1] and negligence based on premises liability. On October

---

[1]    Section 822.042 of the Texas Health & Safety Code, entitled "Requirements for Owner of Dangerous Dog," sets forth the requirements for an owner of a dangerous dog. This section requires, in pertinent part, that within 30 days after a person learns he is the owner of a dangerous dog, the person shall register the dangerous dog with animal control; restrain the dangerous dog at all times on a leash in the immediate control of a person or in a secure enclosure; obtain liability insurance coverage or show fiscal responsibility; and comply with any applicable municipal or county regulation, requirement or restriction on dangerous dogs. *See* Tex. Health & Safety Code § 822.042 (a) (1)-(4).

22, 2015, the appellees filed a no-evidence motion for summary judgment. Thereafter, on March 18, 2016, appellant filed a third amended petition, including another negligence theory —negligence *per se* based upon a violation of a League City Code of Ordinances, Chapter 18.[2]

On May 9, 2016, the trial court granted the appellees' no-evidence summary judgment motion on all claims and signed a take-nothing judgment against appellant. Thereafter, appellant filed a motion for new trial, which was denied. Appellant timely filed this appeal.

## II.    Standard of Review

In a no-evidence motion for summary judgment, the movant must state the specific element or elements of each cause of action on which it urges there is no evidence. *Johnson v. Brewer & Pritchard, P.C*, 73 S.W.3d 193, 207 (Tex. 2002); *see* Tex. R. Civ. P. 166a(i). In reviewing the no-evidence motion, we consider only those grounds set forth in the motion. *See Johnson v. Felts*, 140 S.W.3d 702, 706 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). To defeat a no-evidence motion, the non-movant is not required to marshal all of its proof, but the non-movant is required to point to evidence raising a fact issue on the challenged elements of the cause of action. *Johnson*, 73 S.W.3d at 207.

---

[2] The League City Code of Ordinances, Chapter 18-1, provides as its stated purpose as follows:

> The primary function and intent of this chapter is protection of the health, safety and welfare of the people of the city by controlling the animal population and establishing uniform rules for the control and eradication of rabies.

Among other definitions, Chapter 18-8 prohibits an owner from allowing an animal from running at large within city limits. The Chapter defines "running at large" as ". . . a dog . . . not under direct physical control of its owner or keeper, on the streets, sidewalks or other public or private places." Chapter 18-11 defines "dangerous, vicious or mischievous animals," ownership requirements, prohibitions against dangerous animals running at large, and penalties for violation of the Chapter.

We review the summary judgment de novo. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the non-movant and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id*. Where, as here, the trial court's order does not specify the grounds for its ruling, we must affirm the summary judgment if any of the grounds presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003*)*.

We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983)).

### III.    Analysis

In his brief, appellant identifies a single issue for review— "[w]hether the trial court's grant of summary judgment was error." He argues the trial court erred in granting appellees' no-evidence motion for summary judgment because appellant produced more than a scintilla of evidence on the challenged elements of his claims for negligent handling, strict liability for injury caused by a dangerous domesticated animal, and premises liability.

4

Appellant's claims are predicated on the same set of facts: he was injured as a result of Rusty's aggressive behavior. An essential element of appellant's strict-liability claim is that appellees had actual or constructive knowledge of Rusty's vicious, dangerous, or mischievous nature. An essential element of all of appellant's other claims is proximate cause, which includes the foreseeability element of proximate cause. We address each of these elements below.

## A. Applicable law

### 1. Trial court did not err in granting summary judgment on the negligence theory added in appellant's third amended petition

Appellant argues that appellees failed to allege that appellant had no evidence of a violation of the League City Code of Ordinances because that allegation was added in appellant's third amended petition, which was filed after appellees' no-evidence summary judgment. Appellant alleges that the trial court improperly granted summary judgment on grounds not expressly presented to it and, thus, committed reversible error.

"A summary-judgment motion must stand or fall on the grounds expressly presented in the motion. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993). Nonetheless, if the summary judgment grounds expressly presented in the motion are sufficiently broad to encompass claims or allegations first asserted in an amended pleading filed after the motion, it is procedurally appropriate for the trial court to grant summary judgment as to these new claims or allegations, even if the movant does not amend the motion to address the new claims. *See Wilson v. Korthauer*, 21 S.W.3d 573, 579 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). To state a no-evidence ground the movant must assert clearly that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i) (stating that a no-evidence movant seeks "summary judgment on the ground

that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial" and that "[t]he motion must state the elements as to which there is no evidence"); *BP Oil Pipeline Co. v. Plains Pipeline, L.P.*, 472 S.W.3d 296, 315 (Tex. App.—Houston [14th Dist.] 2015, pet. denied).

In his third amended petition, appellant included another theory—negligence *per se* based on a violation of a League City Code of Ordinances, Chapter 18. Although this ordinance appeared for the first time in his third amended petition, appellant alleged exactly the same underlying factual basis for the violation of the League City Code of Ordinances as he did for the alleged violation of the Texas Health and Safety Code, section 822—appellees' failure to prevent their dog from running at large and attacking appellant. This additional negligence theory continues to attack the same failures. In appellees' no-evidence motion for summary judgment, the appellees specifically challenged the essential elements of the negligence claim and noted that negligence *per se* is not a separate claim independent of common-law negligence. Appellees' no-evidence motion specifically challenged both negligent handling and negligence *per se*. Appellant's claims all depend on the same set of facts. Appellees' no-evidence motion sufficiently covered the negligence *per se* theory based on the League City Code of Ordinances asserted in appellant's third amended petition. *See Wilson*, 21 S.W.3d at 579.

We overrule appellant's issue.

### 2.     Elements of common-law claims

Texas provides three potential common-law claims for individuals who have been injured by a dog or other domestic animal: strict liability, negligence, and premises liability.

6

To recover on a claim of strict liability for injury by a dangerous domesticated animal, a plaintiff must prove: (1) the defendant was the owner or possessor of the animal; (2) the animal had dangerous propensities abnormal to its class; (3) the defendant knew or had reason to know the animal had dangerous propensities; and (4) those propensities were a producing cause of the plaintiff's injury. *See Marshall v. Renne*, 511 S.W.2d 255, 258 (Tex. 1974)[3]; *Thompson v. Curtis*, 127 S.W.3d 446, 451 (Tex. App.—Dallas 2004, no pet.).

To recover for negligent handling of an animal, the plaintiff must show: (1) the defendant was the owner or possessor of the animal; (2) the defendant owed a duty to exercise reasonable care to prevent the animal from injuring others; (3) the defendant breached that duty; and (4) the defendant's breach proximately caused the plaintiff's injury. *See City of Houston v. Jenkins*, 363 S.W.3d 808, 816 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Williams v. Sable*, No. 14–09–00806–CV, 2011 WL 238288, at *3 (Tex. App.—Houston [14th Dist.] Jan. 25, 2011, no pet.) (mem. op.) (setting forth, in a dog-bite case, the elements for "common-law negligent handling of an animal")).

Negligence *per se* is a common-law tort concept in which a statute defines the standard of conduct. *Thomas v. Uzoka*, 290 S.W.3d 437, 444 (Tex. App.—Houston [14th Dist.] 2009, pet. denied). Negligence *per se* is not a separate claim that exists independently of a common-law negligence claim; rather, negligence *per se* is

---

[3] In *Marshall v. Renne*, the Supreme Court adopted § 509 of the Restatement (First) of Torts which states:

> Except as stated in §517, a possessor of a domestic animal which he has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm caused thereby to others, except trespassers on his land, although he has exercised the utmost care to prevent it from doing harm.

511 S.W.2d 255, 258 (1974).

merely one method of proving a breach of duty, a requisite element of any negligence claim. *See id*. at 445. As explained by the Texas Supreme Court, "[n]egligence *per se* is a tort concept whereby a legislatively imposed standard of conduct is adopted by the civil courts as defining the conduct of a reasonably prudent person." *Carter v. William Sommerville and Son, Inc.*, 584 S.W.2d 274, 278 (Tex. 1979). Thus, when claiming negligence *per se*, the plaintiff must show that such negligence was a proximate cause of the injury or damages sustained. *Williams v. Sable*, No. 14-09-00806-CV, 2011 WL 238288, at *3 (Tex. App.—Houston [14th Dist.] Jan. 20, 2011, no pet.) (mem. op.); *Searcy v. Brown*, 607 S.W.2d 937, 941 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ).

Lastly, injured parties may sue a property owner under a premises liability theory. In cases where a person is injured on the premises of another, including dog-bite cases, the duty owed by the landowner depends on the status of the person injured on the premises. *Rosas v. Buddies Food Store*, 518 S.W.2d 534, 536 (Tex. 1975); *see Dunnings v. Castro*, 881 S.W.2d 559, 563 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *Gill v. Rosas*, 821 S.W.2d 689, 691 (Tex. App.—El Paso 1991, no pet.); *Searcy*, 607 S.W.2d at 941; *see also Baker v. Pennoak Properties, Ltd.*, 874 S.W.2d 274, 277 (Tex. App.—Houston [14th Dist.] 1994, no writ). Claimants traditionally have been classified as invitees, licensees,[4] or trespassers. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 909 (Tex. App.—Houston [14th Dist.] 2009, no pet.). A landowner or occupier is liable to a licensee only if the owner or occupier has actual knowledge of the condition that injured the

---

[4] Although appellant, arguably, could be considered a trespasser, he could have no greater status than a licensee; appellant concedes in his brief to being a licensee. Licensees enter the premises solely for their own purposes. *Mayer v. Willowbrook Plaza Ltd. P'ship*, 278 S.W.3d 901, 910 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Absent a relationship inuring to the mutual benefit of the claimant and the owner, a claimant is classified as a licensee. *Id*. A licensee who exceeds the rights and privileges granted by the license becomes a trespasser. *Id*.

plaintiff. *Wong v. Tenet Hosp., Ltd.*, 181 S.W.3d 532, 537 (Tex. App.—El Paso 2005, no pet.). The duty owed to a licensee is not to injure the licensee willfully, wantonly, or through gross negligence, and, in cases in which the owner or occupier has actual knowledge of a dangerous condition unknown to the licensee, to warn of or make safe the dangerous condition. *Lower Neches Valley Auth. v. Murphy*, 536 S.W.2d 561, 563 (Tex. 1976); *Mayer*, 278 S.W.3d at 910.

Proximate cause consists of two elements: (1) cause in fact, and (2) foreseeability. *See Allen v. Albin*, 97 S.W.3d 655, 668 (Tex. App.—Waco 2002, no pet.) (dog-attack case) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995)). "Cause in fact means that the negligent act or omission was a substantial factor in bringing about the injury and without which no harm would have been incurred." *Searcy*, 607 S.W.2d at 941. "[F]oreseeability requires that a person of ordinary intelligence would have anticipated the danger created by a negligent act or omission, although it is not required that such a person would anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence." *Williams*, 2011 WL 238288, at *3 (citing *Read v. Scott Fetzer Co.*, 990 S.W.2d 732, 737 (Tex. 1998); *Choice v. Gibbs*, 222 S.W.3d 832, 839 (Tex. App.—Houston [14th Dist.] 2007, no pet.)). "Foreseeability requires more than someone, viewing the facts in retrospect, theorizing an extraordinary sequence of events whereby the defendants' conduct brings about the injury." *Id.* (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)). Foreseeability cannot be established by mere conjecture, guess, or speculation. *Id.* (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005)). Instead, the question of foreseeability involves a practical inquiry based on common experience applied to human conduct. *Id.* (citing *Read*, 990 S.W.2d at 737; *Choice*, 222 S.W.3d at 839).

9

In their no-evidence summary judgment motion, appellees asserted there is no evidence that (1) their dog had dangerous propensities; (2) the appellees had reason to know that their dog had dangerous propensities; (3) they breached any duty owed to appellant; (4) they behaved differently than a reasonably prudent dog owner would have under the same circumstances; (4) their alleged negligence proximately caused appellant's injury; (5) they violated any statutory duty; or (6) they injured appellant willfully, wantonly, or through gross negligence.

**B. Absence of a fact issue as to knowledge of dangerous propensities and/or proximate cause**

Applying these principles and viewing the summary-judgment evidence in the light most favorable to appellant, we conclude the summary-judgment evidence did not raise a fact issue as to either (1) the essential element of proximate cause for all claims except the strict-liability claim, or (2) for the strict-liability claim, the essential element that the appellees knew or had reason to know that Rusty had dangerous propensities.

The summary judgment evidence submitted by appellant included the following:

- Appellant and his girlfriend's deposition testimony that the front door was left unlocked by appellees.
- Cassy Horton's deposition testimony that Rusty was left in the house behind the unlocked front door.
- Cassy Horton's deposition testimony that no sign warning of the dog's presence was displayed outside of appellees' home.
- Andrew Horton's alleged statement that no other barrier to the outside existed.
- Andrew Horton's post on dog breeder website that "[Rusty] has become very protective over my 8 and 3 year old daughters. Every night he sleeps at the foot of their bed on guard for any would be attackers."

10

- Andrew Horton's post on dog breeder website that "[t]he other day the gas man came into the house unexpectedly and Rusty was quick to let the poor guy know that strangers were not allowed uninvited."

- Andrew Horton's statement that "[t]he reason why, why I purchased the breed is I spend 300 days a year offshore . . . . And my father-in-law works nightshift . . . . We've had mul-, multiple b-, uh, burglaries in my driveway where people have stolen stuff out of the cars and stuff. So we wanted a, a dog in the house just, uh, as a, piece [sic] of mind."

- Andrew Horton's statement that he researched the breed before deciding to get an Akita.

- Information about Akitas on appellees' dog breeder's website provides that the breed is protective, poses a serious threat to intruders, may instinctively attack, was bred to hunt, guard, and fight, is not submissive, will not obey its owners' every command, and is not the type of dog that will love animals and strangers. The breed requires a firm, experienced master, will not be provided to first-time dog owners, should only be entrusted to those willing and capable of providing adequate care and training, and it is recommended that a potential owner conduct thorough research on the breed before adopting.

- An affidavit from a League City Police officer that Rusty lunged through appellees' front door toward appellant's face and attacked appellant on the front porch, there was serious bleeding, the bites were severe.

- Appellant's affidavit that he was in the hospital for six days and had to undergo surgery.

- Photographs of appellant's injury and scarring demonstrating that one year following the incident, appellant shows deep scarring.

In addition, appellant submitted as summary-judgment evidence allegedly inconsistent statements given in response to written discovery by Andrew Horton that included the following:

- "[Andrew Horton] decided to get an Akita after researching the breed known for their gentle nature around children and after watching a movie, Hachi, about an Akita."

- "[Appellees'] dog has never attacked or attempted to attack any person prior to the incident made the basis of this suit."

- "[Andrew Horton] has never received a complaint . . . related to his dog, Rusty."
- Andrew Horton denied knowing his dog was aggressive prior to the incident.
- Andrew Horton denied that the dog has acted aggressively or attacked another person prior to the day of the incident.
- Andrew Horton denied that one reason he chose to own an Akita was to protect his home and property.
- Andrew Horton denied knowing prior to the incident that Akitas have aggressive tendencies.

Whether the risk of injury from a dog bite is foreseeable depends in part on the owner's actual or constructive knowledge of the vicious propensities of his dog. *Dunnings*, 881 S.W.2d at 564; *Gill v. Rosas*, 821 S.W.2d 689, 691 (Tex. App.—El Paso 1991, no writ). Texas courts have held that the owner of a domestic animal is not liable for injuries caused by it in a place where it has the right to be, absent actual or constructive knowledge by the owner of the animal's vicious or dangerous propensities. *Searcy*, 607 S.W.2d at 941 (dog owner was not negligent if the injury occurred where the dog had a right to be and the owner had no knowledge of any dangerous propensities). In the absence of knowledge that a domestic animal is vicious or dangerous, the property owner does not owe a duty to warn a licensee or make any condition safe. *Id*.

Here, the summary-judgment evidence establishes that appellees' dog was restrained in a place it had a right to be—in appellees' house, behind closed doors with no access to the outside. The evidence further establishes that appellant, a licensee, at best, opened the door to appellees' house unannounced and uninvited and was bitten by Rusty on appellees' front porch. No evidence was presented that Rusty had dangerous propensities abnormal to its class. *Dunnings*, 881 S.W.2d at 561. No summary-judgment evidence showed that appellees knew or had reason to know that Rusty had dangerous propensities. No evidence was presented that

appellees had actual or constructive knowledge that Rusty posed an unreasonable risk of harm on their premises. *Searcy*, 607 S.W.2d at 941. No evidence was presented that appellees knew or should have known that Rusty would injure someone, or that appellees behaved differently than reasonably prudent dog owners would have under the same circumstances. *Dunnings*, 881 S.W.2d at 564. Moreover, no evidence was presented that appellees injured appellant, a licensee, willfully, wantonly, or through any gross negligence or had any duty to warn or make safe. *Searcy*, 607 S.W.2d at 941; *Jones v. Gill*, No. 02-03-0298-CV, 2005 WL 503182, at *4 (Tex. App.—Fort Worth Mar. 3, 2005, no pet.). Rusty was on appellees' property at all relevant times and would have remained inside the house behind closed doors (*i.e.*, in a secure enclosure) but for appellant opening the door to appellees' house without permission. *See Searcy*, 607 S.W.2d at 942.

For the preceding reasons, we conclude that the summary-judgment evidence did not raise a fact issue as to either (1) the essential element of proximate cause for all claims except the strict-liability claim, or (2) for the strict-liability claim, the essential element that the appellees knew or had reason to know that Rusty had dangerous propensities. *See Dunnings*, 881 S.W.2d at 561. As such, the trial court properly granted the no-evidence summary judgment on all of appellant's claims. Accordingly, we overrule appellant's issues.

## IV. Conclusion

Having overruled appellant's issues, we affirm the judgment of the trial court.


/s/      John Donovan
         Justice

Panel consists of Chief Justice Frost and Justices Donovan and Wise.