**Affirmed and Memorandum Opinion filed August 29, 2019.**



In the

# Fourteenth Court of Appeals

## NO. 14-18-00417-CV

## ANNA GONZALEZ, Appellant

v.

## ERWIN AHRENS, Appellee

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2015-14365**

## MEMORANDUM OPINION

Appellant Anna Gonzalez brought a claim for strict liability against appellee Erwin Ahrens after she sustained injuries in an incident with Ahrens's sheep "Lamby." After a bench trial, the trial court signed a final judgment awarding a take-nothing judgment in favor of Ahrens. On appeal, Gonzalez argues that the trial court's implied findings against her on her strict-liability claim were not supported by legally- and factually-sufficient evidence. We affirm the trial court's judgment as challenged.

# I. Background

Ahrens owned a farm near Yoakum, Texas, with sheep, goats, cows, horses, chickens, donkeys, and domestic cats and rabbits. Ahrens kept one sheep, "Lamby," as his pet. Lamby slept in Ahrens's house. Ahrens kept Lamby as a "guard sheep" because of prior break-ins. Lamby was friendly but could be territorial and protective when interacting with strangers. On occasion, when he was agitated, Lamby has headbutted (or butted) Ahrens and his girlfriend. Ahrens joked about and showed Lamby's butting to family and friends "because it was rather amusing." Ahrens used to run a kolache shop in Houston; he "would come and go" and split his time between Houston and Yoakum.

In 2013, Ahrens scheduled an appointment to be fitted for hearing aids with a company owned by Cindy Castello. Gonzalez was a trainee. Before the appointment, Ahrens told Castello and Gonzalez to call him before they came over because he was not always at the farm and because he kept a "guard sheep."

Castello and Gonzalez went to Ahrens's farm for the appointment. Ahrens met them at the gate. Ahrens had a "No Trespassing" sign on his gate. Lamby usually has "free run of the property," but Ahrens penned up Lamby with the other sheep during the visit. Castello and Gonzalez met and petted Lamby. Ahrens told them that he bottle-fed and raised Lamby as an orphan sheep. Ahrens was supposed to have another appointment after he had some ear wax buildup removed. Ahrens again told Castello and Gonzalez they should call him beforehand because he might not be there, and they should not enter the property if he was not there. Ahrens did not receive any call about a follow-up appointment.

On Thursday, August 29, 2013, Ahrens was in Houston. That same day, Castello and Gonzalez returned to Ahrens's farm. They opened the gate and drove to the house, and Lamby trotted up to them. While they were removing items from

the truck, Lamby butted Castello. Castello and Gonzalez made it to the porch and knocked on the front door, but there was no answer. They discussed what they should do. Gonzalez, who lived on a farm with livestock, told Castello she could "handle" Lamby. While Castello returned to the truck without incident, Gonzalez was chased by Lamby. According to Gonzalez, Lamby butted her several times with enough force that she "went airborne" and "everything went black." According to Castello, when Lamby caught up with Gonzalez, Lamby butted Gonzalez one time, and she "hit the license plate a little bit." Gonzalez's sunglasses and flip-flops "fell off," and she suffered a scrape on her foot. Gonzalez got back into the truck.

Gonzalez drove back to the company office, about an hour's drive from Ahrens's farm. According to their coworker, Robert Jakobeit, when Castello and Gonzalez returned to the office, Gonzalez told him about the encounter with the sheep and was laughing about it. Jakobeit stated that Gonzalez was not in distress and only had a red mark on her foot from the broken flip-flop. Gonzalez sought medical assistance the day after the incident. According to Gonzalez, she suffered a traumatic brain injury, underwent shoulder and back surgeries, and would require additional surgeries as a result of the incident.[1]

Ahrens did not find out about the incident until several months later when he received a letter from Gonzalez's attorney. He was shocked to find out that Lamby injured someone. Before the incident, Ahrens never received any complaint that Lamby attacked someone while he was not there.[2]

---

[1] Gonzalez testified about her injuries, and the trial court admitted her medical records. Because we do not address the sufficiency of the trial court's implied finding on causation, we need not consider whether it was necessary for Gonzalez to present expert testimony. *See Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007) (general rule is expert testimony is necessary to establish causation as to medical conditions outside common knowledge and experience).

[2] Ahrens has not received any complaint that Lamby has injured anyone else since the incident.

Gonzalez filed suit against Ahrens,[3] alleging claims of strict liability and negligence.[4] The parties filed an agreed motion to waive jury trial and for a preferential setting, which the trial court granted. The case proceeded to a bench trial. Ahrens, Gonzalez, Castello, and Jakobeit testified.

The trial court signed its final judgment, rendering judgment in favor of Ahrens and ordering that Gonzalez take nothing against Ahrens. No party filed a post-judgment motion or requested findings of fact and conclusions of law. *See* Tex. R. Civ. P. 296, 329b. Gonzalez timely appealed.

## II. ANALYSIS

Gonzalez essentially brings one issue[5] on appeal: that the trial court's implied findings on her strict-liability claim were not supported by legally- or factually-sufficient evidence.

When, as in this case, neither party requests findings of fact and conclusions of law following a bench trial, we will imply all findings necessary to support the trial court's judgment. *See Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). When, as here, the record contains the reporter's record, implied findings may be challenged on appeal for legal and factual sufficiency in the same manner as a challenge to jury findings or express findings of fact. *See id.*

When examining legal sufficiency, we review the entire record, considering evidence favorable to the finding if a reasonable fact-finder could and disregarding

---

[3] Gonzalez filed suit in Harris County district court, alleging that Ahrens's principal residence was in Harris County when the claims accrued.

[4] Gonzalez on appeal does not raise or argue any issue regarding the trial court's disposition of her negligence claim.

[5] Gonzalez's second "issue presented" is whether the trial court's take-nothing judgment in favor of Ahrens should be reversed and remanded for a new trial.

contrary evidence unless a reasonable fact-finder could not. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018). We indulge every reasonable inference that would support the challenged finding. *Id.* Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the decision under review. *Id.* Evidence is legally insufficient to support a finding when: (1) the record bears no evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Shields Ltd. P'ship*, 526 S.W.3d at 480. When, as here, a party attacks the legal sufficiency of an adverse finding on an issue on which it bears the burden of proof, the judgment must be sustained unless the record conclusively establishes all vital facts in support of the issue. *See id.*

In reviewing the factual sufficiency of the evidence, we examine the entire record, considering both the evidence in favor of and contrary to the challenged findings. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the judgment for factually-insufficient evidence only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. The party asserting the evidence is factually insufficient must establish that the finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). Because this court is not a fact-finder, we may not pass upon the witnesses' credibility or substitute our judgment for that of the fact-finder, even if the evidence would support a different result. *Mar. Overseas*, 971 S.W.2d at 407.

*Strict liability.* To recover on her claim of strict liability for injury by a dangerous domesticated animal, Gonzalez had to prove: (1) Ahrens was the owner or possessor of the sheep; (2) the sheep had dangerous propensities abnormal to its

5

class; (3) Ahrens knew or had reason to know the sheep had dangerous propensities; and (4) those propensities were a producing cause of her injury. *See Marshall v. Renne*, 511 S.W.2d 255, 258 (Tex. 1974) (approving rule in Restatement of Torts § 509 (1938) that "a possessor of a domestic animal which he has reason to know has dangerous propensities abnormal to its class, is subject to liability for harm caused thereby to others, except trespassers on his land, although he has exercised the utmost care to prevent it from doing the harm")[6]; *Castrejon v. Horton*, No. 14-16-00520-CV, 2017 WL 4797730, at *3 (Tex. App.—Houston [14th Dist.] Oct. 24, 2017, no pet.) (mem. op.); *see also Dangerous*, Black's Law Dictionary (11th ed. 2019) ("likely to cause serious bodily harm").

Gonzalez argues that the evidence conclusively established the vital facts supporting all four elements of her strict-liability claim. She also contends that any implied adverse finding on such elements was so against the great weight and preponderance of the evidence that it was clearly wrong and unjust.

We focus our analysis on the third essential element, which we conclude is dispositive. *See Marshall*, 511 S.W.2d at 258; *Castrejon*, 2017 WL 4797730, at *2. Gonzalez argues the undisputed evidence conclusively established that Ahrens knew or had reason to know Lamby had dangerous propensities.[7] We disagree.

Here, there was evidence that Ahrens knew Lamby was capable of butting people when he was agitated or provoked. Ahrens testified that all sheep "will butt you to a certain extent" because "it's their nature." He stated Lamby sometimes butted Ahrens and his girlfriend, but such behavior was not "vicious" or "the kind

---

[6] Gonzalez mistakenly refers to section 509 of the 1965 Restatement (Second) of Torts. The *Marshall* court adopted section 509 of the Restatement (First) of Torts. *See* 511 S.W.2d at 258.

[7] In this portion of her argument, Gonzalez presented no record citations and only cited one case for the factual-insufficiency standard. *See* Tex. R. App. P. 38.1(i).

6

of aggression that a guard dog would have where they [sic] continually attack . . . and try and really put you down"—Lamby "just butts you." Ahrens testified that he found Lamby's butting "rather amusing" and would have him do it in front of his family and friends. When Lamby would butt Ahrens and his girlfriend, they were never injured, much less seriously injured—"it's like running into something." Prior to the incident with Gonzalez, Ahrens never received any complaint that Lamby had ever attacked or injured anyone when Ahrens was not home.

Reviewing the evidence under the familiar legal-sufficiency standards, we conclude there was some evidence to support the trial court's implied finding that Ahrens did not have actual or constructive knowledge that Lamby had dangerous propensities to knock down and seriously injure an individual on Ahrens's property while he was not there. Gonzalez did not otherwise conclusively establish that Ahrens possessed such knowledge.

Likewise, we conclude that there was factually-sufficient evidence to support the trial court's implied finding regarding Ahrens's (lack of) knowledge. While there was evidence Ahrens knew about Lamby's tendency to butt when provoked or agitated, there also was evidence Lamby had never attacked and his prior butting had never seriously injured anyone. Gonzalez did not establish that the trial court's implied finding was against the great weight and preponderance of the evidence.

We overrule Gonzalez's first issue.[8]

---

[8] Gonzalez also argues that the trial court could not have rendered an adverse judgment on her strict-liability claim based on any affirmative defense of trespass or contributory negligence. We need not address this argument since we have already determined that the trial court's implied finding on an essential element of Gonzalez's strict-liability claim supported its take-nothing judgment in Ahrens's favor. *See* Tex. R. App. P. 47.1.

### III.  CONCLUSION

Accordingly, we affirm the trial court's final judgment as challenged.


/s/      Charles A. Spain
Justice


Panel consists of Justices Wise, Zimmerer, and Spain.